[No. 11749.   Department Two.   June 30, 1914.]

M. C. LIPSCOMB et al., *Appellants*, v. EXCHANGE NATIONAL BANK OF SPOKANE et al., *Respondents*.[1]

APPEAL—REVIEW—HARMLESS ERROR—AMENDMENTS.   Upon a trial *de novo* of a cause tried on the merits to the court, the supreme court will consider all proper amendments to the pleadings as made.

SAME—REVIEW—HARMLESS ERROR—EVIDENCE.   Upon a trial *de novo*, the supreme court will consider the cause as if improper evidence had been excluded below, the admission of which is therefore harmless.

MECHANICS' LIENS—ACTIONS—PAYMENT.   In an action to foreclose mechanics' liens, where an architect and another had agreed to take for their services a certain proportion in cash and the balance in interest bearing obligations issued by the corporation on the faith of the enterprise, they cannot assert nonpayment through the fault of the promoters, when the enterprise failed because of its impracticability, and not on account of the fraud or neglect of the promoters; as they must be held to have assumed the risk of such failure.

MECHANICS' LIENS—PROPERTY SUBJECT—ARCHITECTS—FAILURE TO BUILD.   An architect, preparing plans for a building which was not constructed, cannot claim a lien upon the premises.

MECHANICS' LIENS—PRIORITY—PRIOR MORTGAGE.   Under Rem. & Bal. Code, § 1130, the lien of a prior mortgagee is inferior to the claims for mechanics' liens.

Appeal from a judgment of the superior court for Spokane county, Kennan, J., entered March 22, 1913, upon findings in favor of the defendants, in an action to foreclose mechanics' liens, after a trial to the court. Affirmed.

*Tustin & St. Morris* and *Mark F. Mendenhall*, for appellants.

*Cullen, Lee & Matthews*, for respondents Exchange National Bank et al.

*A. E. Barnes*, for respondents Rice et al.

*E. L. Rice, in propria persona.*

[1]Reported in 141 Pac. 686.

PER CURIAM.—On October 1, 1909, one Peter Edwall owned certain real property, situated in the city of Spokane, and on that day entered into a contract to sell the same to J. B. Ingersoll for the sum of $7,250. Ingersoll paid $1,250 on account of the purchase price of the property at the time of the execution of the contract, and on November 2, 1910, paid $3,000 more, together with the interest then accrued. The contract between the parties was in writing, and was placed in escrow with The Exchange National Bank of Spokane.  Ingersoll subsequently assigned his interest in the contract to one Ona B. McNeill, delivering to her a warranty deed for the premises, which was also delivered to the bank to be held by it until the remainder of the purchase price should be paid.  McNeill then owed the bank $1,250, and to secure this sum, made to the use of the bank a general assignment of all her interest in the property.  On June 9, 1911, McNeill conveyed her interests to R. M. McLaughlin by warranty deed; subject to the payment of the balance of the original purchase price and her obligation to the bank of $1,250, which sums the purchaser assumed and agreed to pay.  Subsequently and on August 31, 1911, McLaughlin assigned his interest in the property to H. C. Rice, together with his interests in the papers held by the bank in escrow, and directed the delivery of the same to Rice upon the payment of the balance of the purchase price and the sum due the bank from McNeill.  On September 28, 1911, Rice represented to the bank that he was not able to pay the $3,000 due the original vendor, and solicited the bank to pay the same, and take a deed to itself to the property, promising and agreeing to pay the sum advanced and the further sum of $1,250 owing to it by McNeill.  The bank agreed to and did thereupon take up the title to the property, paying therefor the sum of $3,000.  Later on, Rice and wife executed their note to the bank for $4,250, being the sum paid the original owners of the property, plus the sum of $1,250 owing it by McNeill; it being agreed between the parties that

the bank should hold the title to the property as security for the payment of the note.

Rice procured the property for the purpose of erecting thereon an apartment house. In the promotion of this scheme, he, with certain associates, organized a corporation, and Rice conveyed to the corporation his interests in the property. The plan adopted to finance the enterprise is not made clear by the record—at least, we have been unable to gather it more than generally from the abstract—but it seems the corporation issued some form of interest bearing obligations, which were secured by the property conveyed to it. Work was started on the building, but before the excavation for the basement was completed, the laborers thereon ceased work because of nonpayment of their wages, and the scheme was subsequently abandoned.

The appellants M. C. Lipscomb, Charley Lipscomb, and William Bass were among those who had performed labor in the excavation of the basement, and who were only partially paid for their services. To secure the remainder, they filed liens upon the property. The appellants Mitchell and Levesque also filed liens on the property, the former claiming to have performed services in the excavation of the basement, and the latter claiming to have performed services as an architect in drawing plans for the building proposed to be erected.

The present action was brought to foreclose these several liens. The complainants made parties to the action all persons who appeared of record to have an interest therein, and alleged that their liens were first and superior to the liens and claims of the respondents.

The respondents Rice and the Rice Apartment Company answered, denying the claim of lien by the appellants Mitchell and Levesque, and pleading payment of all services rendered by them upon the property. By further and separate answers, they alleged that the appellant Mitchell entered into a contract with the Rice Apartment Company for

the construction of the apartment building, by the terms of which he agreed to protect the company against the liens of all persons who should labor thereon, or furnish materials for the construction thereof, and prayed judgment against him for any sum that should be adjudged against the company on account of the liens of Lipscomb, Lipscomb and Bass. The Exchange National Bank also answered, in which it denied the allegations of the complaint to the effect that the appellants' liens were first and superior liens on the property, but alleged, on the contrary, that it had a first and superior lien on the property for the amount of the obligation due it from Rice, and by a cross-complaint prayed a foreclosure of its lien. The affirmative matter in the answers were put in issue by replies. After a trial, the court found in accordance with the affirmative allegations of the answers of the respondents. It found that the claimants Mitchell and Levesque had been fully paid for their services; that the claim of the bank for the money advanced for the use of Rice was a superior lien on the property to the liens of each of the appellants Lipscomb, Lipscomb and Bass, and entered a decree of foreclosure, ordering the property to be sold and the proceeds applied, first, in satisfaction of the lien of the bank, and second, in satisfaction of the liens of Lipscomb, Lipscomb and Bass, the appellants, pro rata.

Some fifty-three errors have been assigned on the appeal, but we find it unnecessary to notice them in detail. Many of them relate to the rulings of the court made in settling the issues, and to the admission of evidence at the trial. But, as we have often said, errors of this sort can seldom furnish grounds for reversal on an appeal from a judgment entered in a cause tried on its merits by the court when sitting without a jury. In considering such a cause in this court, we are required by statute to treat all amendable defects in the pleadings as if proper amendments had been made, and if improper evidence has been introduced to exclude such evi-

dence, and consider the cause as if such improper evidence was not in the record. Errors of this sort are material in this court only when it appears that no possible cause of action can be stated upon the facts shown, or when it appears, after excluding the improper evidence, nothing remains upon which to support a judgment in favor of the party having the affirmative of the issue. It avails nothing, therefore, to point out mere error in these particulars; the complainant must go further and show that, because of the errors committed, a different judgment is required from that entered by the court. The errors complained of in this regard in the present case do not go to that extent. The facts plainly show an existing cause of action, and the only material question is, do the facts shown by the legitimate evidence support the judgment.

Turning to the question of the sufficiency of the evidence, it is first contended that there is not sufficient evidence to justify the finding that the claimants Mitchell and Levesque had been fully paid for their services. These parties performed the services for which the liens are claimed under a special contract. They agreed to take therefor a certain proportion in cash and a certain proportion in the interest bearing obligations issued by the corporation. The evidence shows that they received payment in this form in the proportions agreed upon, but the claim now is that they ought not to be held to the contract in so far as it related to the interest bearing obligations, since the enterprise failed of completion, not through the fault of themselves, but through the fault of the promoters of the enterprise. But we think this is not a sufficient reason for holding the contract nugatory. They were bound to know that any enterprise, especially one dependent for its success on the ability of its promoters to sell securities to the public, is possible to fail of success, and knowing this they must be held to have considered the chances of failure when entering into their con-

tracts. Had it been shown that the failure was the result of fraud, or inattention to the business, on the part of the promoters, a different question would be presented. But there is nothing of this sort in the record. The failure, so far as it appears, was the result of the impracticability of the scheme itself, not because of the fraud of the promoters or want of effort on their part to carry it into effect.

Levesque, however, claims that he was entitled to a much larger sum under his contract than was paid him, and that it was error to deny him the right of recovery for this excess sum. He claims that he was entitled to a lien on the land for the full amount he would have earned had the building been completed. He cites *Gould v. McCormick*, 75 Wash. 61, 134 Pac. 676, as maintaining this position. But in that case the building was completed. It is not the rule that an architect who prepares plans and specifications for a building which is not erected may claim a lien for such services upon the land on which it was contemplated erecting the building. The law contemplates that the lien is to attach to the building, and upon only so much of the land as may be necessary for its use and occupation. In other words, the lien attaches to property which the service has aided in producing. Where, therefore, the building contemplated has not been erected, no lien for the architect's services in drawing plans can attach to specific property. *Rinn v. Electric Power Co.*, 3 App. Div. 305, 38 N. Y. Supp. 345; *Buckingham v. Flummerfelt*, 15 N. D. 112, 106 N. W. 403; *Price v. Kirk*, 90 Pa. St. 47; *Rush v. Able*, 90 Pa. St. 153.

It is next contended that the court erred in holding the liens of the claimants Lipscomb, Lipscomb and Bass, inferior to the lien of the Exchange National Bank. But we find no error in this holding. The bank stood in the position of a prior mortgagee of the premises, and by the express terms of the statute, a lien for labor attaches only to the interest of the person or company who causes the labor to be performed.

Rem. & Bal. Code, § 1130 (P. C. 309 § 57) ; *Baker v. Sinclaire*, 22 Wash. 462, 61 Pac. 170; *Northwest Bridge Co. v. Tacoma Shipbuilding Co.*, 36 Wash. 333, 78 Pac. 996.

Other errors assigned require no special consideration. The judgment is affirmed.