[No. 30537. Department One. August 13, 1948.]

JOHN H. BUNN, *Respondent,* v. JOSEPH B. BATES, *Defendant,* THE MADISON CORPORATION, INC., *Appellant.*[1]

'Reported in 196 P. (2d) 741.

*Brown & Brown* and *Richard W. Axtell,* for appellant.

*Garvin & Frissell* and *Clarence M. George,* for respondent.

SCHWELLENBACH, J.—This is an appeal from a judgment rendered for labor and material furnished to defendants by plaintiff, and foreclosing a lien in the amount of the judgment, plus interest and costs, against the real property owned by defendant, the Madison Corporation.

The Madison Corporation is the owner of a hotel building in Spokane, Washington, known as the Madison hotel. On October 30, 1946, it entered into a five-year lease, with Joseph Bates, of a store room located in the hotel and measuring 150 feet by 50 feet, together with basement space measuring 93 feet by 89 feet. The lease provided in part:

"All electrical wiring shall be changed to the effect that all circuits in leased area are to be removed from present light meter and new meter loop established.

"All changes for the aforesaid re-modeling and re-wiring to be done at the expense of the lessees."

Frank B. Jenkins was in the business of property management, insurance, and real estate. As part of his business, he had occasion to act as agent in behalf of the Madison Corporation in renting the premises in question. He was asked to find a suitable tenant and submit to the corporation the qualifications of the proposed tenant before entering into negotiations. After investigation, he recommended Mr. Bates. He reported Bates' Dunn & Bradstreet rating at between $125,000 and $200,000. Concerning Bates, he wrote:

"He will take the space 'as is' and re-wire it so that all current consumed by him will be on his own individual meter. All necessary repairs and alterations will be made by him during the course of the lease. The Madison Corporation will put the plumbing and hand-operated elevator in good working condition."

A meeting was then had between Dr. Whitaker, Roy S. Hathaway (directors of the corporation), Frank Jenkins,

and Bates, after which they went to the office of Mr. Brown, where the lease agreement was prepared.

We next find Mr. Jenkins contacting Mr. Bunn, whom he had known for a long time, and who had done considerable work for the properties which Jenkins managed. He went to the hotel with Bunn and asked him to submit a figure as to the cost of the new meter loop. Bunn called him a few days later and then went ahead with the work. Jenkins testified that, after the lease was signed, Bates asked him to secure different trades people to do the work required under the lease. He does not remember whether or not he advised Bunn that he was acting under the orders of Bates. Bunn testified that no mention was made of Bates, and that he thought that he was doing the work for the building.

Mr. Bunn testified:

"Q. In order to record or directly charge the premises leased by Bates with the amount of electricity that that premises would use, what was necessary? A. All circuits of that building would have to be cut off of the present meter that was there and connected with the new meter. Q. Now, Mr. Bunn, do you recall on or about when you completed the establishment of this new meter loop? A. Well, I believe we were over there about three or four days on that meter loop proposition."

Exhibit No. 3, a recapitulation of labor performed, shows that on November 14th and 15th a total of 28¾ hours' work was performed. The next work started November 18th.

Three days after the preliminary work was done, the carpenter foreman called and told him he was holding up the job. He went back and Jenkins introduced him to some lady, who, according to Jenkins, was in charge for Bates. Bunn testified that this was his first knowledge of Bates. The lady instructed him as to changing the circuits in the building. She also instructed him to establish window and ceiling lighting fixtures, globes, wall outlets, and clothes racks. Mr. Bunn testified that the charge for the new meter loop was not included in the bill involved in this suit, but that this action was for connecting to the new meter loop

so Bates could have current from the meter loop to his lights in the building.

After Bates had occupied the store room for a little over a month, he went into bankruptcy and removed himself from the premises.

The trial court reduced the labor item from $457.50 to $355.00, and the material item from $451.70 to $205.45. The total amount of the lien was reduced from $928.30 to $577.26, and the attorneys' fee from $600 to $300. It found, in finding No. 8:

"That the following named items of materials furnished and used in the premises by the plaintiff are disallowed as non-lienable items:

| | |
|---|---:|
| 88 34 in. flanges at .35 | $ 30.80 |
| 90 1x12 Rawl plugs at .03 | 2.70 |
| 90 1x12 oval head screws at .01-½ | 1.35 |
| 650 ft. ¾ in. conduit at .17 | 110.50 |
| 30 side outlet elbows at .85 | 25.50 |
| 39 T outlet elbows at 1.10 | 42.90 |
| 80 crosses at .08 | 6.40 |
| 6 75 W. globes at .20 | 1.20 |
| 6 150 W. globes (inside flood) at 1.05 | 6.30 |
| 4 lumiline globes at .93 | 3.72 |
| 24 300 W. globes at .50 | 12.00 |
| 8 rail crosses at .36 | 2.88 |
| | $246.25 |

"That the above named labor and materials, exclusive of the light globes, were used for the making of clothes racks. That under the terms of the lease the lessee was not obligated to make or have made clothes racks. That the light globes which are excluded as non-lienable items are not fixtures nor are they lienable items."

The trial court found that Jenkins was the factual agent of the appellant for all the work done with the exception of the making of the clothes racks. However, the testimony of respondent himself does not support this finding. Respondent testified that, after he had established the new meter loop and before doing any of the other work, he was introduced to a representative of Bates and told that she was in charge of the other work to be done. He testified

that the only work which Jenkins requested him to do was to establish a new meter loop and distribution panel.

The question resolves itself into an interpretation of the terms of the lease, which we have heretofore quoted.

"While the mere relation of landlord and tenant is insufficient to create an agency within the meaning of mechanics' lien statutes, it is generally held that agency may result from contractual provisions of a lease, relating to alterations and improvements to be made by the lessee during the term of the lease. Where the lease contains a provision requiring the lessee to make improvements, it is generally held that the lessee is thus constituted the agent of the lessor for that purpose, within the contemplation of mechanics' lien laws, and this is generally so irrespective of whether the cost of the improvements is to be borne by the lessor or by the lessee, if it clearly appears that the lessee is obligated to make the improvements. However, where it does not otherwise clearly appear that the lessee is obligated to make improvements, the question of responsibility for the cost becomes important in determining the intention of the parties. Regard is had also to the character of the improvements and the benefits to be derived therefrom, in determining whether the parties intended to create an agency for the making of improvements." Annotation, 79 A. L. R. 964.

In considering this rule in *Miles v. Bunn,* 173 Wash. 303, 22 P. (2d) 985, we said:

"The test is whether the lessee, under the terms of the contract, has a privilege merely, or is obligated, to construct improvements."

In other words, if the lessee makes improvements to the leased premises when he has the privilege to do so under the lease, he makes those improvements for his own benefit. On the other hand, if he makes such improvements because he is required to do so under the terms of the lease, he makes them, not only for his own benefit, but also for the benefit of the lessor, and thereby becomes the lessor's agent, and in case of his default, the owner becomes liable for the improvements.

Appellant admits liability for the establishment of the new meter loop and admits that that work was mandatory

under the lease. It denies liability for the installation of show window lighting, convenient outlets, light globes, and reflectors; construction and installation of clothes racks; the addition of some fixtures and changing of others.

The lease provides that "all electrical wiring shall be changed to the effect that all circuits in leased area are to be removed from the present light meter and new meter loop established." To establish the new meter loop it was necessary to put in a new meter and distribution panel, disconnect the circuits serving the leased area from the old distribution panel, and tie those circuits into the new meter and panel. That work was mandatory under the lease. A portion of the labor and material sued for was obviously used for this purpose. But, under the terms of the lease, Bates was not required to establish clothes racks, window and ceiling lighting fixtures, wall outlets, and globes. Those were all for his benefit, and he had the privilege of making such improvements if he so desired.

We are unable to determine from the evidence which labor and material was used in performing the work which was mandatory under the lease, and which labor and material was used in performing work which was permissive.

The judgment is reversed, and the cause remanded to the trial court to take additional testimony and render a decision in accordance with this opinion. Appellant shall recover its costs.

MALLERY, C. J., MILLARD, SIMPSON, and HILL, JJ., concur.