341 P.2d 207

**STANTON TRANSPORTATION COMPANY, a corporation, Plaintiff and Appellant,**

Continental Emsco Company, a division of Youngstown Sheet and Tube Company, a corporation, Plaintiff, Respondent and Cross-Appellant,

v.

Marvin DAVIS, Jack Davis, Jean Davis and Joan Preston, partners, doing business under the firm name of Davis Oil Company, Defendants, Appellants, and Cross-Respondents.

Nos. 8950, 8951.

Supreme Court of Utah.

July 6, 1959.

---

Van Cott, Bagley, Cornwall & McCarthy, Sterling D. Colton, Salt Lake City, for appellant.

Adams, Peterson & Anderson, L. Robert Anderson, Monticello, Clinton D. Vernon, Salt Lake City, Anthony F. Zarlengo, Denver, Colo., for respondents.

1. Eccles Lumber Co. v. Martin, 31 Utah 241, 87 P. 713.

CROCKETT, Chief Justice.

This appeal raises questions as to whether certain services and materials are proper subjects to create liens on defendants' oil well after the prime contractor failed to pay for them.

Stanton Transportation Company sued to foreclose a lien for $12,229.14: $10,984.64 for transporting a drilling rig to the well site, and $1,244.50 for labor in erecting the rig thereon. The trial court held the lien to be valid as to the latter sum, but rejected it as to the claim for transportation.

Continental-Emsco Company, claims $6,-778.74: $4,158.64 for rental of rock-drilling bits, and $2,620.10 for tools and equipment furnished the driller. The trial court allowed Emsco a lien for the value of the bits used, but disallowed it as to the other materials. The appeals and cross-appeals raise the issue as to whether the items above recited are lienable.

Walker-Wilson Drilling Company entered into a contract December 19, 1956, to drill an oil well for defendants Davis upon Davis' lease in a remote section of San Juan County in southeastern Utah for a flat fee of $8.25 per foot. Marvin Davis, who negotiated for the defendants, testified that it was contemplated that the driller would arrange for the transportation of an oil rig to the well site, and the cost was to be included in the $8.25 per foot, but that no specific rig was designated and that he didn't know where the rig was to come from. Walker-Wilson hired Stanton to bring its rig from near Hayden, Colorado, a total distance of 492 miles, some of which was over rough and unimproved roads, and it was necessary to employ 30 men and 23 trucks in connection with the operation.

In drilling the well Walker-Wilson obtained from Emsco on credit many supplies which fall into two general classes: rock-drilling bits; and various other tools and equipment.

Before the drilling was completed Walker-Wilson defaulted on its contract and failed to pay the plaintiffs, who filed their liens. Defendants and others hired by them completed the job and the well began producing on February 27, 1958.

The statute under which plaintiffs claim these liens is unique, and we are not aware of any precedent to look to for guidance in the problem here presented. We set forth the statute, inserting the numbers in brackets for convenience in analyzing it:

"38–1–3. Those entitled to lien— What May Be Attached—Lien on Ores Mined.—[1] Contractors, subcontractors and all persons performing labor upon, or furnishing materials to be used in, the construction or alteration of, or addition to, or repair of, any building, structure or improvement upon land; [2] all foundry men and boiler makers; [3] all persons per-

forming labor or furnishing materials for the construction, repairing or carrying on of any mill, manufactory or hoisting works; [4] all persons who shall do work or furnish materials for the prospecting, development, preservation or working of any mining claim, mine, quarry, oil or gas well, or deposit [5] and licensed architects and engineers and artisans who have furnished designs, plats, plans, maps, specifications, drawings, estimates of cost, surveys or superintendence, or who have rendered other like professional service, or bestowed labor, shall have a lien upon the property upon or concerning which they have rendered service, performed labor or furnished materials, for the value of the service rendered, labor performed or materials furnished by each respectively, whether at the instance of the owner or of any other person acting by his authority as agent, contractor or otherwise. * * *"

In contending that the statute grants a lien for the value of transporting the drilling rig, Stanton picks out this language: "All persons who shall do work * * * for the * * * development * * * of any * * * oil or gas well * * *" and combines it with the later clause, "shall have a lien upon the property upon or concerning which they have * * * performed labor * * *." It is to be conceded that a cursory reading of that language makes Stanton's position seem quite plausible. However, it requires but little reflection to realize that if the statute were given such a broad interpretation, the door would be open to the inclusion of any service pertaining to the planning, exploration, solicitation of finances, advertising, or even such things as office rentals or legal services, which may be regarded as bearing upon the development of an oil well. This would distort the statute beyond its design and make it impractical in its operation.

When uncertainty exists as to the interpretation and application of a statute, it is appropriate to look to its purpose in the light of its background and history, and also to the effect it will have in practical application.

█ The purpose of the lien statutes is to protect those who have added directly to the value of property by performing labor or furnishing materials upon it.[1] Prior to the compilation of our statutes in 1933, these liens were provided for in four separate sections.[2] The Code Commission in consolidating the statutes for that compilation fused all of those sections into one. The section relating to mining activities was formerly Section 3731 C.L.U.1917, to which "prospecting" and "oil and gas wells" were added. The difficulty we here encoun-

1. 36 Am.Jur. 20.

2. 3722, 3731, 3732 and 3747, C.L.U.1917.

ter stems from the fact that another section relating to an entirely different class of services was also consolidated with the other lien sections. It provided in part:

"Architects, engineers, and artisans who have furnished designs, plats, plans, maps, specifications, drawings, estimates of·cost, surveys, or superintendence, or who have rendered other like professional service or bestowed labor *in whole or part, describing, illustrating, or superintending such structure of work done or to be done, or in any part connected therewith,* shall have a lien upon the property upon which they have rendered service, or performed labor, or furnished materials, for the value of such service rendered, labor done, or materials furnished, * * *."[3] (Emphasis added.)

Under the above statute the emphasized language related to those who "bestowed labor," and was purposely broad in order to give a lien for the drawing of plats, plans, maps or specifications which is not done directly upon the property. In the consolidation with other sections the cumbersome emphasized language was deleted and the more general term "or concerning" was inserted as a shorter substitute. A difficulty with Stanton's argument that the latter phrase should be given such a broad application to the entire statute is that doing so would be at variance with the tenor of these statutes and particularly the words creating a lien for labor and materials. The lien given to contractors and laborers specifies the "performing labor upon, or furnishing materials to be used in * * * or repair * * * building * * * or improvement upon [the] land." If the more general phrase "or concerning which" were controlling as to that class of lien claimants, the specific language requiring the work or materials to be upon the property would be idle verbiage.

We do not suggest that the clause, "shall have a lien upon the property upon or concerning which * * *" is not meant to apply to the other classes of liens provided for in the statute. A predicate for all the clauses is grammatically necessary. From the history and purpose of the statute it appears that the words "upon or concerning which" were simply intended to be generally descriptive of the manner in which certain work and services are performed. For example, work done by contractors or laborers upon an oil well or building is done upon the property, whereas, the services of architects and engineers is work which may be regarded as done "with respect to" or "concerning" the property.

■■ While it is true that our statutes are to be liberally construed to give effect to their purpose and to promote justice,[4] it

---

3. 3722, C.L.U.1917.

4. 68–3–2, U.C.A.1953.

is equally true that they should not be distorted beyond the intent of the legislature.[5] This principle is particularly applicable in a situation of this kind where a liability is imposed upon the property owner beyond what he contracted to bear for the improvement of his property. In order to impose upon him such additional burdens the law must clearly spell out the responsibility. Otherwise, the entering into a contract for the improvement of one's property might open the door to unforeseeable risks for the property owner. He is aware of the amount of work to be done upon his property and fairly may be charged with knowledge of the extent thereof. But that is not true of peripheral work that may be in some remote way related to the contractor's activities.

The argument that the legislature in adopting the 1933 compilation of the code consolidating these lien statutes into one section intended to effect a radical change in the meaning of the whole statute would dignify the action of the legislature beyond what actually happened. If a departure from the traditional coverage of the lien laws is to be effected it should be by a clearer manifestation of intent of the legislature than is shown in the manner in which this statute has come to its present form.

It is to be kept in mind that we are not here faced with the problem of the cost of delivery of materials in the ordinary situation which is customarily simply one of the factors in the over-all delivered cost to the customer, which may well be lienable under the statute. The item in question is a very large separate charge for transportation of equipment to be used in connection with the work, and amounts to several multiples of the cost of the service itself. In the light of the above discussion we are in accord with the determination of the trial court that the item of $10,984.64 for the transportation of plaintiffs' drilling rig does not come within the intent and purpose of the statute and was not a valid lien against the defendant's property.

■ The defendants make a two-pronged attack upon the allowance of a lien for the rock-drilling bits furnished by Emsco: that Emsco acted only as billing agent for Hughes Tool Company which furnished the bits; and that the bits were not actually used up but were supplied under a rental agreement, the shafts being returned to Hughes after their use. Neither of these contentions is valid. Emsco used its own credit with Hughes to procure the bits furnished to Walker-Wilson and it had no recourse against Hughes when Walker-Wilson failed to pay. Thus, in the economic sense Emsco furnished the materials by ordering and being responsible for them. The fact that the shafts of the bits had to

5. Eccles Lumber Co. v. Martin, 31 Utah 241, 87 P. 713.

be returned to Hughes and that they were used by the driller under a "rental" is of no consequence either. In drilling an oil well the replaceable end of the rock bit is actually used up, after which the shaft is returned to the supplier for reconditioning. It is the value of the consumed bit teeth for which the charge of $4,158.64 was made. Under such circumstances the furnishing of these bits was within the statute and that Emsco was properly allowed its lien for the value thereof.

■ A different problem exists with respect to the claimed lien of $2,620.10 which represents items such as wrenches, screwdrivers, and other tools, parts, wire brooms and supplies sold to the driller Walker-Wilson by Emsco for which the former did not pay. Emsco urges that they come within the statutory language: "* * * furnish[ing] materials for the * * * development * * * or working of any * * oil well * * *." The statute was purposed to protect a contractor or laborer from loss for labor or materials actually used upon the job, but was not intended to permit one to furnish himself with permanent equipment while working on a job and claim a lien on that property. To hold otherwise could lead to inequitable results and would accommodate itself to machinations to fleece a property holder. As an exaggerated example: a contractor could buy expensive new engines or equipment and any property upon which he was doing a job would be held responsible. With such security the supplier could freely furnish him equipment without concern as to the contractor's credit. This is another reason why caution should be observed in applying the lien statute. We are in accord with the view expressed by the trial court: that the statute contemplates that the material to be lienable must be consumed in its use on the property.

In view of the fact that the lien created an obligation against the property other than what he contracted to bear, there is no injustice in placing upon the claimant the burden of showing just what materials were furnished and the extent to which they were consumed upon the property upon which he claims a lien. The trial court here found that there was a failure of proof in that regard as to Emsco's claim for $2,620.10 for tools and equipment and we do not view the evidence as compelling any different finding.

Affirmed. The parties to bear their own costs.

WADE, HENRIOD and McDONOUGH, JJ., and ALDON J. ANDERSON, District Judge, concur.