464 P.2d 387

**ZIONS FIRST NATIONAL BANK, Plaintiff,**

v.

**Harold A. CARLSON and M. E. Harris, Jr., Defendants.**

**M. E. HARRIS, Jr., Third-Party Plaintiff and Respondent,**

v.

**ZIONS SECURITIES CORP., a Utah corporation, and Artcol Corporation, Third-Party ·Defendants and Appellant.**

No. 11636.

Supreme Court of Utah.

Jan. 19, 1970.

2d 280, 283, 399 P.2d 440 (1965); Pride Oil Co. v. Salt Lake County, 13 Utah· 2d 183, 187, 370 P.2d 355 (1962).

**396**

McKay & Burton, Paul E. Reimann, Leonard S. Ralph, Salt Lake City, for appellant.

Cannon, Greene, Nebeker & Horsley, Salt Lake City, for plaintiff Zions First Nat. Bank.

Draper, Sundack & Saperstein, Salt Lake City, for respondent.

CALLISTER, Justice.

The appellant, Zions Securities Corporation, the owner in fee of certain land, executed a ground lease, as landlord, with Artcol Corporation, as tenant, for a term of 85 years. The respondent, an architect, was engaged by Artcol to draw plans and specifications and render other architectural services for a proposed high-rise apartment building. Artcol went defunct and consequently no building was constructed. The unpaid architect filed a mechanic's lien and sued to foreclose the interests of both the lessor, Zions, and lessee, Artcol.

At the conclusion of the trial, the court made findings of fact and concluded as a matter of law that the interest of Zions became lienable under Section 38–1–3, U.C.A., 1953, by reason of its conduct during the time the architectural services were performed; work was commenced within the meaning of the statute by the clearing of the ground and the digging of soil test holes; and the lien attached and

was not defeated by later abandonment of the work. The court rendered a judgment of foreclosure of respondent's lien.

Appellant contends that since no building was constructed, the architect's lien could not attach to its interest in the land.

Section 38–1–3, U.C.A., 1953, provides:

Contractors, subcontractors and all persons performing labor upon, or furnishing materials to be used in, the construction or alteration of, or addition to, or repair of, any building, structure or improvement upon land; all foundry men and boilermakers; all persons performing labor or furnishing materials for the construction, repairing or carrying on of any mill, manufactory or hoisting works; all persons who shall do work or furnish materials for the prospecting, development, preservation or working of any mining claim, mine, quarry, oil or gas well, or deposit; and *licensed architects and engineers and artisans, who have furnished designs, plats, plans, maps, specifications, drawings, estimates of cost, surveys or superintendence, or who have rendered other like professional service,* or bestowed labor, *shall have a lien upon the property upon or concerning which they have rendered service,* performed labor or furnished materials, for the value of the service rendered, labor performed or

materials furnished by each respectively, *whether at the instance of the owner or of any other person acting by his authority as agent, contractor, or otherwise.* * * *

(Emphasis added to relevant provisions.)

The trial court properly construed Section 38–1–3, U.C.A., 1953, insofar as it held that an architect may file a lien upon the property concerning which he has rendered professional service, although his plans may not be brought to fruition by erection of a building. However, the judgment of the district court may not be sustained, since under the facts and circumstances there is no basis to conclude that Zions Securities Corporation impliedly authorized its lessee, Artcol, to engage an architect so as to bind the lessor's interest in respect to the services rendered.

In Stanton Transportation Company v. Davis,[1] this court observed:

The statute under which plaintiffs claim these liens is unique, and we are not aware of any precedent to look to for guidance in the problem here presented. * * *

In the Stanton case, this court examined the history and background of Section 38–1–3, U.C.A., 1953. Prior to the compilation of the Utah statutes in 1933, the liens provided in this section were in four

[1]. 9 Utah 2d 184, 186, 341 P.2d 207, 209 (1959)

separate sections. The Code Commission in consolidating the statutes for that compilation fused all of those sections into one. The former section relating to architects and engineers provided:

Architects, engineers, and artisans who have furnished designs, plats, plans, maps, specifications, drawings, estimates of costs, surveys, or superintendence, or who have rendered other like professional service or bestowed labor *in whole or in part, describing, illustrating, or superintending such structure of work done or to be done, or in any part connected therewith,* shall have a lien upon the property upon which they have rendered service, or performed labor, or furnished materials, for the value of such service rendered, labor done, or materials furnished, * * *. 3722 C.L.U., 1917.

This court stated:

Under the above statute the emphasized language related to those who "bestowed labor," and was purposely broad in order to give a lien for the drawing of plats, plans, maps or specifications which is not done directly upon the property. In the consolidation with other sections the cumbersome emphasized language was deleted and the more general term "or concerning" was inserted as a shorter substitute. * * *

* * * From the history and purpose of the statute it appears that the words "upon or concerning which" were simply intended to be generally descriptive of the manner in which certain work and services are performed. For example, work done by contractors or laborers upon an oil well or building is done upon the property, whereas, the services of architects and engineers is work which may be regarded as done "with respect to" or "concerning" the property.[2]

Under this unique statutory enactment, an architect is entitled to a "lien upon the property upon or concerning which" he has rendered his professional services.

As was observed in 1966 Utah Law Review, 181, 188, "Architects and surveyors are specifically entitled to mechanics' liens under the Utah statute. Their liens create a priority problem, however, since their services are usually performed before the 'visible to the eye' commencement of construction * * *."

In the instant action, there was no priority problem involved. However, if there were, the problem would be to resolve the priorities and not to reconstruct the specific language of Section 38–1–3, so as to deprive an architect, who has rendered services concerning a specific res, of his lien. This interpretation is reinforced by the language of the prior statute which granted an

2. See pp. 187–188 of 9 Utah 2d, p. 210 of 341 341 P.2d.

architect a lien for "describing, illustrating * * * such structure of work * * * to be done, or in any part connected therewith, * * *" The Stanton case clearly established that there was no intention to change the unique nature of the lien granted to architects, and the Code Commission merely substituted some of the cumbersome language with more general terms.

The critical issue of the instant action is whether Zions impliedly authorized the architectural services and thus impliedly granted its lessee authority to bind its fee interest. The trial court found as a matter of fact that the lessee had been granted implied authority to bind the lessor's interest by the following: (a) The provisions of the option to lease and the lease; (b) Approval of preliminary sketches; (c) Execution of zoning variance applications and appearances and participation in zoning hearings; (d) Approval of architectural services (Exhibit 22).

Exhibit 22 is a letter from Zions to the Planning and Zoning Board of Adjustment, requesting an extension of a variance order. In the letter it is stated:

> * * * Since that time, the developers to whom we have leased the property, have been working through their architect, Mr. M. E. Harris, to complete the plans and also to work out the building and development program.

The facts to support findings (b) and (d) were merely expressions of knowledge of the lessor that the lessee was proceeding with the development of the property and do not constitute an implied authorization. Zion's participation in the zoning hearings was in compliance with specific provisions of the lease, which cannot be distorted into an agency agreement, wherein Zions agreed:

> * * * it will join in any and all applications for permits, licenses or other authorizations required by any governmental or other body claiming jurisdiction in connection with any work which the TENANT may do hereunder, * * *.

The sixteen-page lease agreement, which superseded the option to lease, contains numerous provisions, which, if any structure or improvement be erected, grant substantial benefits which will inure to the lessor's reversionary interest. However, there is no agreement that the lessee make any improvement or engage in any business upon the property nor could Zions compel its lessee to build or forfeit the lease. Provision 7 specifies:

> ARTCOL, at its own cost and expense, *may at its option,* erect and construct a building or buildings, structure or structures, or other improvements on the demised premises which shall conform with all rules, regulations and ordinances of Salt Lake County, State of Utah. * * * (Emphasis added.)

In Utley v. Wear[3] the court in a scholarly opinion conceptualized the implied agency issue as follows:

> The subjection of the premises to a lien for improvements made by a tenant cannot arise from the mere *relationship* of landlord and tenant. It must come from the fact (if such is the fact) that the tenant is the agent for the landlord. This agency can, of course, be expressly granted by the contract. However, * * * the agency sufficient to incur the lien is often found to arise by implication.
>
> It is frequently stated that the mere permission or *acquiescence* of the landlord for the tenant to have the work done is not [alone] a sufficient factual basis for implication of such agency. But where the lease *requires* or *obligates* the tenant to construct improvements *which substantially* enhance the value of the freehold, then the tenant is usually considered as having been authorized as agent of the owner for the purpose of subjecting the premises to a lien. * * *
>
> * * * in order to make such covenant constitute an agency between the lessor and lessee, we are necessarily bound to look at the facts to determine whether there was an agency or not. If, on account of the shortness of the lease, the extent, cost, and character of the improvements, or other facts in evidence, such as the participation by the lessor in the erection or construction thereof, it can be seen that the improvement is really for the benefit of the lessor, and that he is having the work done through his lessee, then it can be said with justice that the lessee in such case is acting for the lessor. * * *
>
> * * * * * *
>
> In determining whether an agency should be implied the courts have often, perhaps of necessity, gone beyond the agreement and into the whole circumstances of the letting in order to find the answer. * * * where the premises are let for a *specific purpose* and where the nature of the premises is such that the purpose *cannot be accomplished* except by the making of substantial improvements to the freehold, then the tenant is, by implication, *required* to make such improvements. He has no other option, and hence he is the landlord's [implied] agent to the extent of subjecting the property to a lien, this upon the theory that the landlord contemplated the necessity and required that such necessity be met. [Citations omitted.][4]

---

3. Mo.App., 333 S.W.2d 787, 791–792, 793 (1960).

4. Also see Newport v. Hedges, Mo.App., 358 S.W.2d 441 (1962); DeVry Brick Co. v. Mordka, 96 Ariz. 70, 391 P.2d 925, 926 (1964); Bunt v. Roberts, 76 Idaho 158, 279 P.2d 629, 630 (1955); Bunn v. Bates, 31 Wash.2d 315, 196 P.2d 741, 743 (1948); Backstatter v.

■ In the instant action, the lease agreement created merely a relationship of landlord and tenant for a term of 85 years. The lease neither *required* nor *obligated* the lessee to construct any improvements which would substantially enhance the value of the freehold. The lessor participated in the plans for construction only insofar as the law required the owner of the fee to make certain applications. The evidence upon which the trial court relied to support its determination constituted merely a grant of permission or acquiescence on the part of the lessor for the lessee to have the work done. The lessee, solely at its option, could determine whether or not to construct any improvement on the land. Under these circumstances, the lessee cannot, as a matter of law, be held the (implied) agent of the lessor so as to subject the lessor's fee interest to a mechanic's lien.

The other points raised on appeal are without merit. The judgment of the district court in respect to its disposition of the party, Zions Securities Corporation, is reversed and remanded. No costs awarded.

TUCKETT and HENRIOD, JJ., concur.

CROCKETT, Chief Justice (concurring).

I concur upon the ground, as stated in the main opinion, that "under the facts and circumstances there is no basis to conclude that Zions Securities Corporation impliedly [or expressly] authorized its lessee, Artcol, to engage an architect so as to bind the lessor's interest" in the property.

ELLETT, Justice (concurring in the result).

I concur in the result reached in the main opinion but do not think it is necessary to place my concurrence upon the grounds given therein. In my opinion, an architect can have no lien upon land when no building is erected thereon.

Section 38–1–3, U.C.A.1953, as set out in the main opinion provides that certain persons therein specified shall have a lien upon the property upon or concerning which they have rendered service, etc. All alike are given liens, and all liens are upon equal footing (Sec. 38–1–10, U.C.A.1953) regardless of the time when the work was performed.

By Sec. 38–1–4, U.C.A.1953, the extent of the liens (including those for architects) is set out as follows:

The liens granted by this chapter shall extend to and cover so much of the land whereon such building, structure or improvement shall be made as may be necessary for the convenient use and occupation thereof, * * *.

I know of no case where a lien has been granted when there was no improvement to

Berry Hill Building Corp., 56 Misc.2d 351, 288 N.Y.S.2d 850, 852 (1968);

Thorson v. Maxwell Hardware Co., S.D., 146 N.W.2d 739, 741 (1966).

■

**402**

the land, and none to the contrary is cited in the main opinion or in the briefs of counsel.

By Sec. 38–1–5, U.C.A.1953, all liens are given a priority as of the time when work was *first done or material furnished on the ground* for the improvement. Since in this case there never was any work done on the ground nor material furnished on the ground for the structure, there would be no effective date for the lien of the architect, even if he had one.

The general law is stated in 57 C.J.S. Mechanics' Liens § 36, page 530, to be:

\* \* \* While there is some authority holding that he may acquire a lien even though his plans and specifications are not used, ordinarily no lien may be allowed for plans and specifications not used. \* \* \*

See also annotation in 60 A.L.R. at page 1270.

That which does not become a part of the realty is generally considered as not giving any rights to a lien under the statutes. See 36 Am.Jur., Mechanics' Liens § 351. For example, there is no mechanic's lien available to one who furnishes or installs trade fixtures which are not installed as a part of the construction or improvement of a building, and this is so for the reason that trade fixtures remain personalty and do not become a part of the realty. See annotation

in Ann.Cas.1912B at page 20 and 42 Am. S.R. at page 796.

Our statute gives the lien only for material furnished and work done in the construction, alteration, or addition to or repair of any *building, structure, or improvement upon land.* See Frehner v. Morton, 18 Utah 2d 422, 424 P.2d 446 (1967).

The plans and specifications of an architect are a service rendered for the benefit of the building only, and they in no wise enhance the value of the land unless the building is constructed.

The purpose of the statute is primarily to protect those who have added directly to the value of real property by performing labor or furnishing material upon it. See Stanton Transportation Co. v. Davis, 9 Utah 2d 184, 341 P.2d 207 (1959). It is to prevent the contracting owner of an interest in land from taking the benefit of improvements placed thereon without paying for labor and material that went into it. See King Bros., Inc. v. Utah Dry Kiln Co., 13 Utah 2d 339, 374 P.2d 254 (1962).

By the contract between the architect and Artcol Corporation, the plans and specifications remain the property of the architect whether the building is constructed or not. Here the architect tries to get full pay for his plans and specifications of which he and he alone claims full ownership.

In this case the drawing of plans and specifications would not enhance the value

of the land unless there was construction of an improvement thereon. When the plans and specifications are brought to fruition, then the land is benefited as much by the architect's preliminary work as it is by the labor and materials actually furnished in the erection of the building pursuant to the plans and specifications.

The Supreme Court of Washington in the case of Lipscomb v. Exchange Nat. Bank of Spokane, 80 Wash. 296, 141 P. 686, 688 (1914), stated:

* * * It is not the rule that an architect who prepares plans and specifications for a building which is not erected may claim a lien for such services upon the land on which it was contemplated erecting the building. The law contemplates that the lien is to attach to the building, and upon only so much of the land as may be necessary for its use and occupation. In other words, the lien attaches to property which the service has aided in producing. Where, therefore the building contemplated has not been erected, no lien for the architect's services in drawing plans can attach to specific property. [Citations omitted.]

It followed, therefore, that the trial court erred in holding that the architect had a lien upon the land.

Since the respondent had no lien at all, I do not think it was necessary to discuss the other matters covered in the prevailing opinion.