**GRACO FISHING AND RENTAL TOOLS, INC. and I.G. Specialty Machine Shop, Plaintiffs, Appellees, and Cross–Appellants,**

v.

**IRONWOOD EXPLORATION, INC., R.D. Poindexter, Horizon Oil & Gas Company, William H. Walton and Arden A. Anderson, Defendants, Appellants, and Cross–Appellees.**

No. 870170.

Supreme Court of Utah.

Dec. 27, 1988.

See also 735 P.2d 62.

Robert M. McRae, Vernal, Harry H. Souvall, Salt Lake City, for plaintiffs, appellees and cross-appellants.

F. Alan Fletcher, Salt Lake City, for defendants, appellants, and cross-appellees.

STEWART, Justice:

Defendant Ironwood Exploration, Inc. (Ironwood), appeals the trial court's imposition of a mechanic's lien for $19,766.36 in favor of plaintiff Graco Fishing and Rental Tools, Inc. (Graco), and an award of attorney fees. Graco cross-appeals the trial court's refusal to enter judgment against Ironwood under the Utah contractor's bonding statute for an additional amount.

## I.  FACTS

The facts in this case are not disputed. Ironwood was the owner of an oil and gas lease in Duchesne County, Utah.  On November 23, 1983, Ironwood entered into a contract with Lantz Drilling and Exploration Company, Inc. (Lantz), for the drilling of various oil and gas wells, including a well on the leasehold known as the Ute Tribal No. 12–5 well or the Gulf Foy 12–5 well.

Thereafter, Lantz entered into a rental subcontract with Graco.  At various times between December 15, 1983, and January 17, 1984, Graco rented equipment to Lantz

for its use in drilling the well, for which Graco billed Lantz the sums of $65.50, $19,-766.36, $10,035.32, and $632.25, a total of $30,499.43. Lantz did not pay these invoices, and on April 3, 1984, Graco filed a notice of lien on the well in the amount of $19,766.36. A timely notice of lien was not filed by Graco with respect to the remaining invoiced amounts, which total $10,-733.07. Lantz did not furnish a bond to assure payment of its subcontractors, did not pay any portion of the invoices, and has been declared bankrupt in a chapter 11 proceeding. Ironwood has not paid Graco any portion of the amount that Lantz owed Graco, but has paid Lantz, or its creditors having valid liens against the Ironwood leasehold, all but $10,345.41 of the amount due under the contract between Ironwood and Lantz.

On May 7, 1984, Graco initiated this action in the district court against Ironwood for the amount of $30,433.93 under three causes of action: (1) imposition and foreclosure of a lien on the well, (2) unjust enrichment, and (3) failure to require a bond under Utah Code Ann. § 14-2-2, (1953, as amended). Following the filing of cross-motions for summary judgment, the district court dismissed Graco's unjust enrichment and contractor's bond claims, but ruled that Graco was entitled to a lien against the well in the amount of its notice of lien, $19,766.36, and to a foreclosure of the lien. The court also held that Graco was entitled to an award of attorney fees. Thereafter, the court awarded Graco attorney fees in the amount of $3,798.75.

## II. THE MECHANIC'S LIEN STATUTE

We first address Ironwood's contention that the district court erred in imposing a mechanic's lien in favor of Graco. We believe that the district court correctly held the 1981 amendment to the mechanic's lien statute, Utah Code Ann. § 38-1-3 (Supp.1985) (amended 1987), to apply to Graco's rental charges, equipment sales, transportation charges, and repair and inspection charges. Ironwood asserts that *Stanton Transp. Co. v. Davis*, 9 Utah 2d 184, 341 P.2d 207 (1959), specifically con-

cluded that the then-existing mechanic's lien statute did not apply to rental charges such as those claimed by Graco in the present action.

Whatever the scope of the holding in *Stanton*, the 1981 amendment to the lien statute specifically extends lien coverage to rental charges. The 1981 amendment added the following underscored language to the mechanic's lien statute:

Contractors, subcontractors and all persons performing any services or furnishing *or renting* any materials *or equipment* used in the construction, alteration, or improvement of any building or structure or improvement to any premises in any manner; all persons who shall do work or furnish materials for the prospecting, development, preservation or working of any mining claim, mine, quarry, oil or gas well, or deposit; and licensed architects and engineers and artisans who have furnished designs, plats, plans, maps, specifications, drawings, estimates of cost, surveys or superintendence, or who have rendered other like professional service, or bestowed labor, shall have a lien upon the property upon or concerning which they have rendered service, performed labor or furnished *or rented* materials *or equipment* for the value of the service rendered, labor performed or materials *or equipment* furnished *or rented* by each respectively. . . .

The obvious purpose of the 1981 amendment was to extend the protections of the mechanic's lien statute to persons who rent equipment or materials. That conclusion, which follows from the language of the amendment itself, is also supported by the wording of the title of the bill which enacted the 1981 amendment: "An Act Relating to Liens; Providing Protection for Persons Who Rent Equipment or Materials Under the Mechanics' Lien Statute." 1981 Utah Laws ch. 170.

Ironwood observes that the Legislature failed to add language referring to rental material and equipment to the phrase in the statute specifically dealing with "persons who shall do work or furnish materi-

als for the prospecting, development, preservation or working of any ... oil or gas well...." From that, Ironwood argues that the Legislature did not intend to extend mechanic's lien protection to persons who rent materials and equipment for use in oil and gas development. That reading of the statute not only ignores the implicit purpose of the 1981 amendment, but also overlooks the most logical reading of the plain language of the statute. The phrase dealing with oil and gas wells is not, by itself, a complete sentence and must be read in connection with the remaining language of the sentence, i.e.:

> All persons who shall do work or furnish materials for the prospecting, development, preservation or working of any ... oil or gas well ... shall have a lien upon the property upon or concerning which they have rendered service, performed labor or *furnished* or *rented materials, or equipment* for the value of the service rendered, labor performed or *materials* or *equipment furnished or rented* by each respectively....

(Emphasis added.) When read in that manner, the language of § 38-1-3 clearly extends mechanic's lien protection to rental materials and equipment used in connection with work on oil and gas wells.

Ironwood also asserts that charges for repair and inspection of rental equipment are not lienable. In light of our conclusion that § 38-1-3 specifically permits a lien to be imposed for the value of rented equipment, we conclude that repair and inspection costs associated with the rental are also lienable. *See generally Stanton Transp.*, 9 Utah 2d 184, 341 P.2d 207.

In addition, Ironwood contends that the transportation charges made by Graco are not subject to lien. Ironwood relies on *Stanton Transportation* to support its view. In that case, the Court disallowed a lien for unusual transportation charges incurred in transporting an oil rig several hundred miles over unimproved roads. The Court cautioned, however, that the opinion did not deal "with the problem of the cost of delivery of materials in the ordinary situation which is customarily sim-

ply one of the factors in the over-all delivered cost to the customer, which may well be lienable under the statute." 9 Utah 2d at 189, 341 P.2d at 210–11. When considered in light of the purpose of the mechanic's lien statute, preventing a windfall to property owners at the expense of equipment, material, and labor suppliers, we hold that reasonable transportation charges are lienable. The trial court did not err, therefore, in ruling that those charges are lienable.

Additionally, Ironwood challenges the application of the mechanic's lien statute to equipment sales made by Graco. Specifically, Ironwood asserts that drill pipe and gaskets totaling $5,919.14 were sold to Lantz by Graco. *Stanton Transportation* set forth a requirement that to be lienable, material "must be consumed in its use on the property," and the Court required the lien claimant to bear the burden of showing that the materials in question were consumed. 9 Utah 2d at 190, 341 P.2d at 211. Ironwood claims that the drill pipe and gaskets were not consumed or that, at least, Graco did not meet its burden by showing consumption and, therefore, these items are not lienable. A review of the sparse record in this case reveals that these claims were not presented in the trial court, and they are not properly preserved for review by this Court. *Franklin Fin. v. New Empire Dev. Co.*, 659 P.2d 1040, 1045 (Utah 1983).

In sum, the district court's imposition of a mechanic's lien in favor of Graco for rental charges, equipment sales, and transportation charges was proper.

### III. THE CONTRACTOR'S BOND STATUTE

Graco asserts on its cross-appeal that the contractor's bond statute, Utah Code Ann. § 14-2-1 (1973) (amended 1985), as it existed at the time this dispute arose, applied to the rental services provided by a subcontractor on an oil well and required Ironwood to obtain a bond to protect Graco's interest. Graco argues that it is therefore entitled to a judgment against Ironwood under § 14-2-2 because Ironwood failed to

obtain a bond from Lantz as required by § 14–2–1. When this dispute arose, § 14–2–1 provided:

> The owner of any interest in land entering into a contract, involving $2,000 or more, for the construction, addition to, or alteration or repair of, any building, structure or improvement upon land shall, before any such work is commenced, obtain from the contractor a bond in a sum equal to the contract price, with good and sufficient sureties, conditioned for the faithful performance of the contract and prompt payment for material furnished and labor performed under the contract. Such bond shall run to the owner and to all other persons as their interest may appear; and any person who has furnished materials or performed labor for or upon any such building, structure or improvement, payment for which has not been made, shall have a direct right of action against the sureties upon such bond for the reasonable value of the materials furnished or labor performed, not exceeding, however, in any case the prices agreed upon; which right of action shall accrue forty days after the completion, or abandonment, or default in the performance, of the work provided for in the contract.

> The bond herein provided for shall be exhibited to any person interested, upon request.

Section 14–2–2 provided:

> Any person subject to the provisions of this chapter, who shall fail to obtain such good and sufficient bond ... shall be personally liable to all persons who have furnished materials or performed labor under the contract for the reasonable value of such materials furnished or labor performed not exceeding, however, in any case the prices agreed upon. Actions to recover on such liability shall be commenced within one year from the last date the last materials were furnished or the labor performed.

A leasehold owner is required, upon entering into a contract for construction upon the leasehold, to obtain a bond from the contractor for the amount of the contract price. Failure to do so renders a lessee or leasehold owner liable to one who furnishes labor or materials under the contract for the value of the labor and materials furnished. *See Buehner Block Co. v. Glezos*, 6 Utah 2d 226, 230, 310 P.2d 517, 520 (1957). *See also Metals Mfg. Co. v. Bank of Commerce*, 16 Utah 2d 74, 395 P.2d 914 (1964); *Liberty Coal & Lumber Co. v. Snow*, 53 Utah 298, 178 P. 341 (1919). Graco asserts that although there was no language expressly including rental costs in § 14–2–1 and § 14–2–2, the inclusion of rental costs falls within the protection of those provisions because it is consistent with both the plain language and the intent of the statutory language.

Because Ironwood owned a leasehold interest in land and its contract with Lantz provided for the improvement of a structure upon the land, namely, the oil wells, the contractor's bond statute applies to Ironwood. The critical question here is whether Graco, as a subcontractor which incurred rental costs, is a party who has "furnished materials or performed labor for or upon such building, structure or improvement for which payment has not been made."

The contractor's bond statute and the mechanic's lien statute have the same purpose and contain similar provisions and language. This Court has established the general rule that "[b]ecause of the common purpose of these lien and contractors bond statutes, and their practically identical language, adjudications as to what is lienable under the former are helpful in determining the proper application of the latter." *King Bros., Inc. v. Utah Dry Kiln Co.*, 13 Utah 2d 339, 341, 374 P.2d 254, 255–56 (1962) (footnote omitted).

Prior to 1981, neither statute contained express language which made rental charges lienable. As noted in Part II above, the mechanic's lien statute was amended in 1981 to make rental charges lienable. With that amendment, the two statutes diverged because the contractor's bond statute was not amended to include rental charges until 1985. Today, the two

statutes have the same purpose and contain similar provisions and language.

Whether the Legislature's creation of that divergence was intentional or mere oversight is irrelevant. The fact remains that when this action arose, rental charges were not expressly subject to the contractor's bond statute and the liability it imposes. This Court stated in *Stanton Transportation:*

> While it is true that our statutes are to be liberally construed to give effect to their purpose and to promote justice, it is equally true that they should not be distorted beyond the intent of the legislature. This principle is particularly applicable in a situation of this kind where a liability is imposed upon the property owner beyond what he contracted to bear for the improvement of his property. *In order to impose upon him such additional burdens the law must clearly spell out the responsibility.* Otherwise, the entering into a contract for the improvement of one's property might open the door to unforeseeable risks for the property owner. He is aware of the amount of work to be done upon his property and fairly may be charged with knowledge of the extent thereof. But that is not true of peripheral work that may be in some remote way related to the contractor's activities.

9 Utah 2d at 188–89, 341 P.2d at 210 (emphasis added) (footnotes omitted). Therefore, until the contractor's bond statute was broadened to expressly include rental charges, liability for rental charges could not be imposed under it.

## IV. UNJUST ENRICHMENT

Graco further asserts on cross-appeal that Ironwood has been unjustly enriched. Graco performed in excess of $30,000 worth of work on Ironwood's well, over $10,000 of which was not recoverable under the mechanic's lien statute. Graco asserts on appeal, as it did in the trial court, that Ironwood has been unjustly enriched by the amount that Graco is unable to recover. The trial court granted Ironwood's motion for partial summary judgment and dismissed the claim for unjust enrichment.

■ On appeal, a trial court's disposition of an issue by summary judgment will be reviewed to determine if there is any genuine issue of material fact. If there is not, the trial court's ruling is reviewed under a correctness standard to determine if the prevailing party was entitled to judgment as a matter of law. *Thornock v. Cook,* 604 P.2d 934, 936 (Utah 1979).

In its brief and during oral argument, Graco has not argued that the trial court erred in granting summary judgment against it on the ground that there is a material issue of fact. Graco also failed to provide any legal analysis or citation to legal authority setting forth the applicable legal principles in support of its contention that summary judgment was improperly entered against it on its claim for unjust enrichment. We therefore decline to rule on this issue. *See State v. Amicone,* 689 P.2d 1341, 1344 (Utah 1984); R. Utah S.Ct. 24(a)(9). *See also Cavett v. Peterson,* 688 P.2d 52, 59 (Okla.1984); *Chambers–Castanes v. King County,* 100 Wash.2d 275, 289–90, 669 P.2d 451, 460 (1983) (en banc); *Trout v. Wyoming Oil & Gas Conservation Comm'n,* 721 P.2d 1047, 1053 (Wyo. 1986).

## V. ATTORNEY FEES

■ Finally, Ironwood contests the district court's award of $3,798.75 as attorney fees pursuant to Utah Code Ann. § 38–1–18 (1988). It asserts that Graco was awarded attorney fees on issues on which it did not prevail. Our resolution of this issue requires a short recitation of the facts surrounding the trial court's award of fees.

Concurrent with the entry of judgment on the other issues, the trial court awarded Graco $7,500 in attorney fees. After Ironwood objected, the trial judge withdrew the award and requested that Graco submit affidavits substantiating attorney fees. The affidavits submitted requested fees totalling $3,798.75, but they did not differentiate between the fees incurred in prosecuting the cause of action on which Graco was

successful and those claims on which it was not. Over a month later, Ironwood filed a written objection, claiming that the affidavits did not adequately differentiate between the time spent on the successful claim and the time spent on unsuccessful claims. Graco filed a written response to the objection, asserting that the objection was not timely filed or served according to Utah Rules of Civil Procedure 54(d)(2) (objections to costs must be filed within seven days) and Rule 2.8(b) of the Rules of Practice in the District and Circuit Courts (responsive memoranda must be filed and served within ten days of the original motion). The trial court stated in writing that Graco's affidavits, Ironwood's objection, and Graco's response had been considered and awarded the full amount of the fees requested.

Graco contends on appeal that the legal work done on Ironwood's liability under the lien statute and under the contractor's bond statute was essentially coterminous and that the award was therefore justified. The record is silent on whether the trial court so found. It is also silent on whether the trial court ruled in Graco's favor on that ground or on the ground that the objections were tardy. Since the record is not clear on the matter, we remand to the district court for a determination on the issue of attorney fees.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR FURTHER PROCEEDINGS.

HALL, C.J., HOWE, Associate C.J., and DURHAM and ZIMMERMAN, JJ., concur.