ANNIE E. MORROW, Respondent, *v.* CHARLES C. MERRITT, Defendant, and GEORGE CALDER, Appellant.

### Mechanic's Lien—Interest of Reversioner.

C. leased to M. certain real estate, upon which the lessee erected improvements, under special stipulation that he was to expend $2,500 in permanent improvements. *Held*, that under section 1, p. 44, Sess. Laws 1894, a mechanic's lien does not attach to the interest of the lessor as reversioner.

(No. 876. Decided March 28, 1898.)

Appeal from the Third district court, Salt Lake county. Jacob Johnson, *Judge.*

Action by Annie E. Morrow against Charles C. Merritt and George Calder to declare and foreclose a mechanic's lien. From a judgment for plaintiff defendants appeal. *Reversed.*

*Williams, Van Cott & Sutherland,* for appellant.

*Brown & Henderson,* for respondent.

Building contracts cannot be disguised under the name of lease or by the pretended relation of lessor and lessee. *Burkitt* v. *Harper,* 79 N. Y. 273; *Otis* v. *Dodd,* 90 N. Y. 336; *Barclay* v. *Wainwright,* 86 Pa. St. 191; *Woodward* v. *Leily,* 36 Pa. St. 437; *Cook* v. *Goodyear,* 79 Wis. 606; *Savoy* v. *Jones,* 2 Rawle 350; *Leiby* v. *Wilson,* 40 Penn. 67; *Schmaiz et al.* v. *Mead,* 125 N. Y. 188.

Such attempts to evade a mechanic's lien are called by Boisot, "quasi leases," and by Phillips, "improvement leases." Boisot on Mch. Liens, Sec. 298; Phillips on Mch. Liens (2nd Ed.), Sec. 91.

The work was done and the materials furnished at the instance, and under the authority of, Calder, within the meaning of this statute. See authorities above cited, also *Otis* v. *Dodd* (N. Y.), Hunn. 538; *Congdon* v. *Cook,* 55 Minn. 1; *Ness* v. *Wood,* 42 Minn. 427.

Zane, C. J.:

This is an appeal from a decree for $770.76, and for costs against the defendant Merritt, and foreclosing a mechanic's lien upon the interests of both defendants in the real estate described, and the improvements thereon. A default was entered against the defendant Merritt. It appears that the fee was in the defendant Calder, and his co-defendant was his tenant; that he did not contract with the plaintiff for the materials or labor furnished by the plaintiff, or authorize any one to contract therefor;

and he prosecutes this appeal from so much of the decree as declares the amount found due a lien on his interest. The evidence upon which the findings were made is not before us. Therefore the only question for us to decide is, do the findings authorize the decree?

The ninth finding is to the effect that the materials were furnished and the labor performed at the instance and request of both defendants, as shown by the lease made a part thereof. By the terms of the lease, the defendant Calder let the premises ordered sold to his co-defendant, for the term of five years, for the sum of $12,000; $166.75 to be paid on the 1st day of each month during the first year, and $208.33 monthly during the second year, and annual payments of $2,500 during the remainder of the term. The tenant also covenanted to expend $2,500 in the erection of permanent improvements on the premises during the term, and, at its expiration, to deliver the same to the lessor in as good repair as when delivered, reasonable wear from use excepted. It does not appear that Calder authorized Merritt to make the improvements at his expense, or to furnish the materials or to perform the labor for him. The relation of principal and agent did not exist between them. Did the covenant in the lease that the tenant should expend $2,500 in permanent improvements on the premises give the contractor a lien upon the landlord's interest in the property, for the price of the materials and the compensation of the labor in question, furnished at the special instance of the tenant? The answer depends upon the meaning of the following provisions of section 1, p. 44, Sess. Laws, Ter. Leg. 1894: "Mechanics, material men, contractors, or sub-contractors or builders * * * performing labor upon, or furnishing materials to be used in, the construction, * * * addition, or repair * * * of any building, * * * shall

have a lien upon the property upon which they have
* * * performed labor or furnished materials for the
value of such * * * labor done or materials furn-
ished, whether at the instance of the owner or any other
person acting by his authority or under him, as agent,
contractor or otherwise, for the work or labor done
* * * or materials furnished * * * whether
done or furnished * * * at the instance of the owner
of the building * * * or his agent: pro-
vided, that a lien, or liens shall attach only to
such interest as the owner or lessee may have in the real
estate." Under this lease the lien exists upon the interest
of the reversioner when the materials are furnished or
the services are rendered at his request, or upon the re-
quest of his agent or contractor. The request of the ten-
ant is not sufficient, though he has bound himself to make
improvements. It is otherwise when the statute creates
a lien, as in some states, upon the interest of the owner
of the reversion when he permits the tenant to make im-
provements or repairs upon his property, or when he
knows of them and does not inform the person performing
the labor or furnishing the materials that his property will
not be responsible for them. This interpretation of the
section quoted is supported by authority. *Conant* v.
*Brackett*, 112 Mass. 18; *Johnson* v. *Dewey*, 36 Cal. 623;
*Muldoon* v. *Pitt*, 54 N. Y. 269; *Knapp* v. *Brown* 45 N. Y.
207; Phil. Mech. Liens (3d Ed.) § 89; 2 Jones Liens §§
1276–1278; *Waterman* v. *Stout* (Neb.), 56 N. W. 987.

For the use of the premises for the term of five years,
the tenant covenanted to pay $12,000, and to make per-
manent improvements thereon costing $2,500. With this
agreement to make permanent improvements, it is in-
sisted the lease should be regarded as a building contract.
Under the mechanic's lien laws of Pennsylvania, the

courts of that state have held such instruments to be, in effect, building contracts, and have decreed liens upon the lessor's estate as well as the lessee's for labor and materials furnished upon the request of the latter. Phillips, in his work on Mechanics' Liens (3d Ed., § 90), says: "In Pennsylvania, however, the protection of the mechanic and material man has been pushed to the last extremity. Its first act provided that no building could be bound except for the payment of a debt contracted by 'the owner or owners thereof,' under which it was decided that where the owner made a contract with another to build his house, and that other engaged or employed mechanics or material men, he did so upon his own credit, and not upon that of the building. Subsequent statutes omitted these words, and made 'every building subject to the payment of the debts contracted for work,' etc. Decisions followed, declaring that the lien thus provided for arose from a credit given to the building, and not to the owners, and, as the remainder was benefited by the improvements, it was properly bound by the lien." But in section 92 the same author says: "In order to guard the owner against the ruinous effects liable to flow from such building leases, when confined to repairs, etc., it was found necessary in Pennsylvania to enact, in relation to certain counties of that state, 'that nothing shall render property liable to liens for repairs, alterations, or additions, where the same has been altered by any lessee or tenant, without the written consent of the owner or reputed owner, or his or her duly-authorized agent.' Under this statute, it has been decided, where a landlord, in writing, extended the lease of his tenants in consideration that they would make certain improvements 'at their own cost,' and improvements were made, and the material men entered a lien for the work, that the premises were not liable to the

lien." A mechanic's lien law applicable to certain coun-
ties of the state of New York provided that any person
performing labor or furnishing material used in a build-
ing, altering or repairing any house by virtue of a con-
tract with the owner, or any person permitted by him to
build, make alterations or repairs upon such premises,
shall have a lien upon the interest of such owner for the
value of such material or labor. Under this law, certain
decisions of that state, to which we have been referred,
hold that the permission of the lessor is sufficient to sub-
ject his interest to a lien in favor of the material man,
laborer, or builder. We have also been referred to decis-
ions of the supreme court of the state of Minnesota, under
a law of that state, subjecting the interest of the owner
of land to a lien for the cost of material and labor per-
formed in erecting buildings, or in making improvements
thereon, unless he shall, within five days after knowledge
therof, give notice that his interest shall not be subject
thereto. Doubtless, statutes of other states may be found
giving a lien upon the interest of the lessor of land with-
out a contract with him or his agent, when material or
labor is furnished to the tenant, and employed with his
consent in erecting buildings or making improvements
on the land. But, as we have seen, the Utah statute, upon
which the plaintiff must rely, requires the materials to be
furnished or the services to be rendered upon the request
of the owner of the land, or his agent, before the lien can
arise upon his interest. The judgment is reversed, with
costs.

BARTCH and MINER, JJ., concur.