## UPTON v. HEISELT et al.

No. 7430.   Decided October 25, 1950.   (223 P. 2d 428.)
(Rehearing denied January 2, 1951.)

See 32 C. J. S. Evidence, Sec. 446. Adverse posssesion ·sustained by evidence in quiet title action, 134 A. L. R. 458. See, also, 1 Am. Jur. 793.

*Skeen, Bayle & Russell,* Salt Lake City, for appellants.

*Musser, Gibson, Musser & Christensen,* Salt Lake City, for respondent.

PRATT, Chief Justice.

Plaintiff, A. E. Upton, seeks to quiet title to the real estate hereinafter described. He · bases his title upon certain tax deeds, and he also claims by adverse possession. The defendants who appeared are L. H. Heiselt and the Heiselt Construction Company. Their pleadings admit the tax deeds. They question the validity of those deeds; but allege further that due to a partnership relationship that existed among Upton, Heiselt and one Peterson, Upton could not acquire title in himself except as trustee for the partnership members.

By his pleadings, plaintiff also raised the question of the application of the statute of frauds and the statute of limitations to the issues. The sections of our code to which reference is made are: Secs. 104—2—5, 6, 7, and 23, U. C. A. 1943; and 104—2—5.10, Laws Utah 1947, c. 8 (limitations); and Secs. 33—5—1, U. C. A. 1943 (fraud). Certain sections of the Colorado Code are also mentioned.

The lower court ruled against the application of the statute of limitations on the pre-trial. Plaintiff was successful below in quieting his title, and the appearing defendants appealed.

The property involved is described as follows:

"Lots 1, 2, 3, 4, 5, 6, 7, 26, 27, 28, 29, 30, 31, and 32 in Block 2, Maack Addition, Plat "A," Salt Lake City Survey, in the Northwest Quarter of the Southeast quarter of Section 23, Township 1 North, Range 1 West, Salt Lake Meridian;

"Lots 33, 34 and 35, Block 2, Maack Addition Plat "A," Salt Lake City Survey, in the Northwest quarter of the Southeast quarter of Section 23, Township 1 North, Range 1 West, Salt Lake Meridian; and

"Lot 36, Block 2, Maack Addition Plat "A," Salt Lake City Survey, in the northwest quarter of the Southeast quarter of Section 23, Township 1 North, Range 1 West, Salt Lake Meridian."

A brief history of this property, as it appears in the abstract, follows:

In 1919, the L. R. Wattis Company acquired lots 1 to 7 and 25 to 32 of the lots in controversy. In 1921, the Heiselt Construction Company acquired lots 33 to 35 of the lots in question.

In 1925, the L. R. Wattis Company, the Heiselt Construction Company, and the Wattis Samuels Company acquired a part of lot 36, being a triangular piece 112.4 feet x 161.5 feet x 116.1 feet.

At various times these properties were sold for taxes and redeemed by named title holders, but in 1932, the in-

terest in Lot 36 was redeemed by A. E. Upton; and in 1937, all lots were purchased by A. E. Upton upon tax deed from the County. Again, at the May sale, in 1941, A. E. Upton purchased said lots from the county upon tax deeds. Thereafter, the taxes were paid by Upton.

In acquiring the title to part of the property in 1937 from the County, the deeds were put in the name of A. E. Upton, due to the fact that he furnished to Mr. Heiselt's counsel, Mr. Roberts, the sum of $1225, with which to acquire that title. There is no controversy about this fact.

Briefly, the lower court's findings are these: That the tax deeds to Upton covering the premises are good and valid tax deeds; that they were acquired in 1941; that there is no partnership relation shown to have existed between Upton, Heiselt and Peterson; that there is no trust or joint tenancy relationship shown to have existed between Upton and Heiselt and Peterson; that Upton entered into actual possession of the premises on or about September, 1939, and in any event on the 26th day of May, 1941, claiming them in his own right and has ever since used and claimed them as his own, adversely to the defendants; that neither of the defendants, nor any grantor nor predecessor of them, or either of them, has been in possession of said premises nor any part thereof; and that plaintiff has paid the taxes thereon during that time.

It is contended by the defendants that plaintiff failed to prove a valid tax title to the property. In this contention the defendants are correct. At the pre-trial of the case, the lower court determined that two issues upon plaintiff's complaint were subject to proof:

"(1) The adverse possession alleged in plaintiff, which defendant denies, claiming that title was held in trust.

"(2) Did plaintiff Upton make improvements upon the property, and the amount thereof."

Accordingly, the procedural steps relating to the validity of the tax title were not proven by the plaintiff. It may be that, under the pre-trial order as framed, the defendants could have proceeded to introduce evidence establishing that the tax deeds were invalid. They did not, however, choose to do so, and they thus waived this issue in the trial court, and may not now raise it before this court.

In establishing the affirmative of pre-trial issue number one above, as to adverse possession, one Watson was called on behalf of plaintiff, and testified as to having rented the property in 1941, from William J. Christensen, an attorney, who represented himself as being Mr. Upton's representative. To rebut this evidence, defendant sought to introduce testimony indicating that William J. Christensen was in the employ of defendant Heiselt in 1941 and 1942. The record does not disclose that any proof was offered and rejected to the effect that Christensen was acting as Heiselt's agent in the renting or leasing agreement with Watson, or anything else having to do with the property in dispute. The evidence sought to be introduced was upon matters relative to employment of Christensen to dispose of some rails, and also as attorney in other matters. We find no error in the court's ruling.

The defendants also claim prejudicial error in the rejection by the lower court of certain proposed exhibits numbered 17, 37, 38 and 20. Exhibits 17, 37 and 38 are two letters and a memorandum, which defendants claim evidence the fact that Upton did not claim title to the property in dispute, but only claimed a lien thereon. These exhibits center around the date April 18, 1946, and refer to a proposed settlement between Upton

and Heiselt. They do not, by their wording, indicate any limitation in the interest claimed by Upton. The three exhibits were rejected by the court as being efforts to compromise difficulties between the parties. We find no prejudicial error in their rejection.

Exhibit 20 is a letter addressed to A. E. Upton from the referee in bankruptcy of the District of Colorado where he states that as the property was involved in Heiselt's bankruptcy proceedings, into which the latter entered in 1940, he, Upton had acquired no tax title after October 20, 1940, by reason of Section 75 of the Bankruptcy Act, 11 U. S. C. A. § 203. This was clearly inadmissible opinion evidence on issues that were to be decided by the court in which suit was initiated, not by the referee. In the bankruptcy schedules there appears to be nothing said about this property, nor about any partnership relation among Upton, Heiselt and Peterson.

Defendants contend that the evidence does not sustain the findings that there was no partnership or other trust relationship between the parties.

Plaintiff, Upton, was the president of a Colorado bank, and Peterson was a director thereof. Most of the evidence introduced in the case centers upon the question of whether the three were acting as partners, or whether Upton and Peterson were merely loaning funds from the bank to Heiselt to aid him in the performance of his contracts with the Denver and Rio Grande Railroad, to help get him on his feet financially.

As evidence of a partnership, defendants point to certain deposits made in the account of L. H. Heiselt in the National City Bank in May of 1936; defendants claiming that they were made by Upton and Peterson, as interested parties in transactions between Heiselt, Upton and Peterson, as partners, but plaintiff claiming that they

were loans to Heiselt, if the sums were actually deposits made by Upton and Peterson.

Another matter which defendants contend evidences a partnership arises out of an instrument dated May 8, 1936, signed by L. R. Wattis for the L. R. Wattis Company and for the Caldwell Construction Company, granting to L. H. Heiselt and A. E. Upton an option to buy the interest of these two companies and the interest of the Wattis Samuels Company in their property, which is the property in question. The defendants claim that this option was exercised by Upton on July 4, 1936, for both parties, but the instrument introduced as evidencing that exercise (writing on a telegram blank by Upton) is signed by Heiselt and not Upton. Later, on July 25, Heiselt signed two checks payable to L. R. Wattis, one for $100, and one for $400, upon this agreement. The check for $100 has the words "Upton ok" in its upper left hand corner.

As other evidence of a partnership, defendants introduced numerous canceled checks signed with the words, "Heiselt Construction Company, L. H. Heiselt" with the initials "A. E. U."—this apparently being Upton's signing of Heiselt's name with his own initials or signature following. There is also one check signed by that company by L. H. Peterson. The checks were issued pursuant to certain business carried on by the company. Checks were issued to attorney Roberts, signed by the company, by Upton, and also by the the company, by L. H. Heiselt. A. E. Upton drew a $500 check to himself and signed the company name, by himself.

In general, and in effect, Upton's explanation of these checks is that with his signature, his bank would cash the checks, regardless of the fact that Heiselt Construction bank account might be low or overdrawn, and Heiselt could thus continue in business. He further indicated that they were friends of long standing and that he was seeking

to help Heiselt out by loans and such process of guaranteeing check payments, and that otherwise Heiselt was in such financial straits as to be unable to continue in business.

It is clear from the evidence that there was no partnership as claimed by the defendants. Upton denied that there was such a partnership, and in addition to his denial the other evidence also sustains the lower court in this finding.

A letter signed by L. H. Heiselt and addressed to A. E. Upton (exhibit 39) speaks of Upton's payment of $1225, as an advance for taxes with the understanding that Upton was to have title to the property in dispute until this advance was paid off. There were taxes advanced as far back as 1936. This certainly is not in line with any thought of a partnership relation. The acceptance of the L. R. Wattis Option (exhibit 18) heretofore referred to, was signed by Heiselt and is introduced by the words, "I accept option." Money was advanced by Heiselt or the Heiselt Construction Company by Upton and by Peterson personally, but most of the money loaned was bank money, and Heiselt signed notes to the bank and to Upton and Peterson for money borrowed. A letter dated December 22, 1936, signed by an attorney Roberts and addressed to Heiselt, speaking of the $1225 payment of Upton for taxes, says nothing about any partnership relation. Neither Peterson nor Upton received any money from the contracts with the Railroad otherwise than as repayment of money loaned to Heiselt. This is not all the evidence in the case supporting the court's finding that there was no partnership, but it is sufficient to show that quite aside from any technicalities as to the proof of partnership, there is substantial evidence to support the trial court's findings.

It is argued by appellants in their brief that possibly

some other fiduciary relationship existed as between the parties, which would preclude the plaintiff holding the property on his own behalf. It is suggested that there existed a co-tenancy between the parties, or else that the title was placed in Upton as security for a loan of $1225, advanced Heiselt for the redemption of the property from tax sale, and in fact created a mortgage-mortgagor relation.

As to cotenancy, the evidence fails to show Upton with an interest in the property as a cotenant with others, but rather, shows his interest in the property arising under the tax deeds. The option to purchase the property was accepted by Heiselt, not by Upton, although Upton admittedly drafted the telegram of acceptance. The record is devoid of evidence of any claim of title by Upton predicated upon exercise of that option. The evidence sustains the lower court's findings in this regard.

As to the possibility of a mortgagee-mortgagor relationship, this theory is raised for the first time on appeal, and must consequently be disregarded. Were this not so, however, the evidence is to the contrary, to the effect that Upton agreed orally to sell to Heiselt, upon Heiselt paying the $1225, plus keeping the taxes paid up, neither of which was done. It does not appear that Upton advanced the money to purchase the property as a loan to Heiselt.

There is some hint as to other possible fiduciary relationships existing between the parties; however, they are not set out with any degree of certainty. It is sufficient answer to say that the evidence sustains the lower court in its determination that no fiduciary relationship existed between the parties.

Inasmuch as there existed no fiduciary relationship between the parties, we find the evidence amply sustains the trial court's finding that plaintiff claimed ownership of the property exclusively, and openly and notoriously.

Judgment of the lower court is affirmed.   Costs to respondent.

WADE, WOLFE, McDONOUGH, and LATIMER, JJ., concur.