INTERIORS CONTRACTING INCORPORATED, and Action Fire Sprinkler Company, a Utah corporation, Plaintiffs and Respondents,

v.

NAVALCO, a Utah corporation, aka Navalco of Utah, et al., Defendant and Appellant.

INTERIORS CONTRACTING INCORPORATED; and Action Fire Sprinkler Company, a Utah corporation, Plaintiffs and Appellants,

v.

NAVALCO, a Utah corporation, aka Navalco of Utah; John Darrell Tohara; Lawrence Lincoln; Terrence Tohara; American Green Acres, aka Green Acres of America; Roy E. Christensen; Carol M. Christensen, Defendants and Respondents.

Nos. 17096, 17105.

Supreme Court of Utah.

June 10, 1982.

Roy G. Haslam, Glen M. Hatch, Daniel M. Allred, Barbara K. Polich, Salt Lake City, for defendant and appellant.

Walker E. Anderson, Salt Lake City, Richard Dalebout, Provo, for plaintiffs and respondents.

STEWART, Justice:

This matter involves two consolidated appeals from a judgment entered in an action against the fee owner of certain premises, and from a judgment against the owner's lessee, who is also a sublessor in another action, to foreclose mechanics' liens for labor and materials supplied a sublessee,

Hungry Hawaiian Inc. In No. 17105 plaintiffs, Interiors Contracting, Inc. (hereafter "Interiors"), and Action Fire Sprinkler Company (hereafter "Action"), appeal from a summary judgment dismissing their complaint against defendants, Green Acres of America, Inc., the sublessor (hereafter "Green Acres") and Roy E. and Carol M. Christensen (hereafter "Christensens"), guarantors of a note executed by Green Acres in favor of Navalco.

In No. 17096 defendant Navalco, the fee owner, appeals from a judgment entered by the trial court sitting without a jury against Navalco and in favor of Interiors and Action.

Green Acres is the primary tenant under a 10-year lease from Navalco (the "master lease"). Green Acres has an option to renew for an additional 5-year term. The lease was executed January 24, 1975.

On January 17, 1978, Green Acres sent a letter to Navalco informing Navalco of Green Acre's intent to sublet a portion of the building to defendant, Hungry Hawaiian Inc. (hereafter "Hungry Hawaiian") for use as a restaurant.[1] The letter, in pertinent part, states:

> Pursuant to the [master] lease we hereby request your approval of the subtenant [Hungry Hawaiian] and the *alternations* [necessary to put a restaurant into operation] ....
>
> You may indicate your acceptance of the tenant *and the alterations* by executing this letter in the space provided below. [Emphasis added.]

The letter was signed and the request accepted by a representative of Navalco on January 31, 1978, and by a written sublease dated February 13, 1978, Green Acres sublet a part of the building to Hungry Hawaiian.

On March 21, 1978, Interiors and Hungry Hawaiian entered into a contract for the

---

1. Paragraph 13 of the Master Lease is entitled "Assignment and Subletting" and provides: "Neither this lease nor any interest herein may be assigned by Tenant voluntarily or involuntarily, by operation of law, and neither all nor any part of the leased premises shall be sublet by Tenant without the written consent of Landlord first had and obtained; however, Landlord agrees not to withhold its consent unreasonably for Tenant to sublet the demised premises.

finishing of interior walls and ceilings in that portion of the building leased to Hungry Hawaiian by Green Acres. A contract for the installation of a fire sprinkling system was entered into March 1, 1978, between Action and Hungry Hawaiian. Work was performed by Interiors and Action on the Hungry Hawaiian premises until April 29, 1978. Neither Interiors nor Action received full payment for their labor and materials and on June 27, 1978, each filed a notice of lien on the building.

Thereafter, Interiors and Action filed a complaint against numerous defendants.[2] On the same day, a document entitled "Notice to Lien Claimants to Appear and Exhibit Proof of Their Liens" was filed as required by Utah Code Ann., 1953, § 38–1–12.[3] The notice required by that section was duly published. On December 18, 1978, the lien claims of Interiors, Action, and other lien claimants were ordered filed, the priority of the lien claimants was established, and additional lien claims were barred.

Green Acres and the Christensens then filed motions to dismiss for failure to state a claim. Green Acres contended it had not given its consent to the improvements made on the portion of the building leased to Hungry Hawaiian and that Hungry Hawaiian had not acted on behalf of Green Acres in contracting for the improvements. On that basis Green Acres asserted that the complaint failed to state a claim upon which relief could be granted. Hungry Hawaiian's claim against the Christensens was based on a guarantee executed by Roy E. Christensen in connection with the lease between Navalco and Green Acres. The Christensens' motion to dismiss alleged that the guarantee was for the benefit of Naval-

co only and did not apply to improvements made by a subtenant, and that a portion of the guarantee was not in effect at the time the improvements were begun.

Affidavits were submitted both in support of and in opposition to the motions. The court treated the motions to dismiss as motions for summary judgment under Rule 56 and granted judgments in favor of Green Acres and the Christensens.

The trial court concluded that (1) Green Acres had not contracted with Interiors or Action for the alterations; (2) Green Acres did not induce reliance by Interiors or Action on Green Acres; and (3) Hungry Hawaiian was not the agent of Green Acres in contracting to have the improvements made. In addition to dismissing the complaint, the court awarded Green Acres a $1,000 attorney's fee as provided by § 38–1–18.

The complaint was dismissed as to the Christensens for the reasons that (1) defendant Carol M. Christensen had not executed the guarantee upon which her liability was predicated; (2) the guarantee was special rather than general and ran only to Navalco; and (3) the portion of the guarantee relating to the personal performance of Green Acres' obligations under the lease with Navalco had terminated before any work had started on the Hungry Hawaiian premises. The Christensens were also awarded a $1,000 attorney's fee pursuant to § 38–1–18.

The key legal issue under the Utah mechanics' and materialmen's lien laws, is whether liens may be imposed upon a remote lessor and a sublessor for work and material plaintiffs provided a sublessee. Section 38–1–3 provides in pertinent part:

---

**2.** The complaint lists the following defendants: Navalco, a Utah corporation, aka Navalco of Utah; Hungry Hawaiian, Inc.; Valley Bank & Trust Company, a State of Utah Banking Corporation; Sentinel Security Life Insurance Company; Apex Enterprises, dba American Heritage Log Homes; First Security Bank of Utah; Gray's Electric; Economy Builders Supply, Inc.; John Darrell Tohara; Lawrence Lin-

coln; Terrence Tohara; Herbert Bergmann, dba Bergmann Heating and Air Conditioning; American Green Acres, aka Green Acres of America; Troy Built Co.; John Does I–V.

**3.** Section 38–1–12 was repealed by 1981 Utah Laws ch. 173, § 1.

Contractors, subcontractors and all persons performing any services or furnishing or renting any materials or equipment used in the construction, alteration, or improvement of any building or structure or improvement to any premises in any manner ... shall have a lien upon the property upon or concerning which they have rendered service, performed labor, or furnished or rented materials or equipment, for the value of the service rendered, labor performed or materials or equipment furnished or rented by each respectively, *whether at the instance of the owner or of any other person acting by his authority as agent, contractor or otherwise.* Such liens shall attach only to such interest as the owner may have in the property .... [Emphasis added.]

### I. Green Acres

We first address the question whether Green Acres' interest in the property is subject to a lien for work performed and materials supplied in improving the premises for Hungry Hawaiian.

■ The purpose of the Utah mechanics' lien law is to provide protection to those who enhance the value of a property by supplying labor or materials. *First of Denver Mortgage Co. v. Zundel*, Utah, 600 P.2d 521 (1979). We construe the lien statutes broadly to effectuate that purpose. See *Stanton Transportation Co. v. Davis*, 9 Utah 2d 184, 341 P.2d 207 (1959).

■ Under § 38–1–3 a lessee may be "an owner" within the meaning of the statute and his leasehold may be subjected to a

mechanic's lien. *Buehner Block Co. v. Glezos*, 6 Utah 2d 226, 310 P.2d 517 (1957). The precise issue, therefore, is whether the improvements made for Hungry Hawaiian were made "at the instance of the owner," Green Acres "or any other person acting by [its] authority as agent, contractor or otherwise."

■ The rule in this State is that the mere existence of a lessor-lessee relationship, without more, does not justify charging the lessor's interest with a mechanic's lien for improvements made on the property at the instance of the lessee. *Zions First National Bank v. Carlson*, 23 Utah 2d 395, 464 P.2d 387 (1970); *Morrow v. Merritt*, 16 Utah 412, 52 P. 667 (1898). The statutory language "at the instance of ..." requires either an express or implied contract between the lessor or his agent and the contractor. *Zions First National Bank v. Carlson, supra; Eccles Lumber Co. v. Martin*, 31 Utah 241, 87 P. 713 (1906); 10 Thompson on Real Property § 5189 (repl. ed. 1957); see also *Stroh Corp. v. K & S Development Corp.*, Iowa, 247 N.W.2d 750 (1976).

■ A lessee does not become the agent of the lessor simply on the basis that the lessor has knowledge that improvements are being made, or even that the lessor cooperated with the lessee with respect to the improvements, such as by assisting in obtaining necessary zoning changes. *Zions First National Bank v. Carlson, supra*. However, even though Green Acres sought to protect itself against liability arising as a result of Hungry Hawaiian's actions,[4] the lease provisions relied on cannot override the effect of the me-

---

4. The lease provides:

 7(b). Any such physical changes and all rearrangements which are made by Lessee with the approval of Lessor shall be made at Lessee's expense....

 7(c). Lessee shall promptly pay all contractors and materialmen, so as to minimize the possibility of a lien attaching to the leased premises, and should any lien be made or filed by reason of any default of Lessee, Lessee shall bond against or discharge the

same within ten days after written request of Lessor.

 13. ... Lessee agrees to indemnify and save harmless Lessor from all liability whatsoever, on account of any real or claimed damage or injury and from all liens, claims and demands arising out of the use of the premises and its facilities, or any repairs or alterations which Lessee may make upon said premises ....

chanics' lien law as to persons not a party to the lease. *Metals Manufacturing Co. v. Bank of Commerce*, 16 Utah 2d 74, 395 P.2d 914 (1964).

In *Zions First National Bank v. Carlson, supra*, this Court, quoting from *Utley v. Wear*, Mo.App., 333 S.W.2d 787 (1960), stated that a lessor is subject to a lien for improvements by a tenant if the lease *"requires or obligates* the tenant to construct improvements *which substantially enhance the value of the freehold . . . ." Id.* at 792. For the lease to create an agency between the lessor and the lessee under the mechanics' lien law, the facts of the transaction must be explored:

> * * * in order to make such covenant constitute an agency between the lessor and lessee, we are necessarily bound to look at the facts to determine whether there was an agency or not. If, on account of the shortness of the lease, the extent, cost, and character of the improvements, or other facts in evidence, such as the participation by the lessor in the erection or construction thereof, it can be seen that the improvement is really for the benefit of the lessor, and that he is having the work done through his lessee, then it can be said with justice that the lessee in such case is acting for the lessor. [*Id.* at 792 (quoting *Dierks & Sons Lumber Co. v. Morris*, 170 Mo.App. 212, 156 S.W. 75, 77 (1913)).]

> \* \* \* \* \* \*

In determining whether an agency should be implied the courts have often, perhaps of necessity, gone beyond the agreement and into the whole circumstances of the letting in order to find the answer. * * * [W]here the premises are let for a *specific purpose* and where the nature of the premises is such that the purpose *cannot be accomplished* except by the making of substantial improvements to the freehold, then the tenant is, by implication, *required* to make such improvements. He has no other option, and hence he is the landlord's (implied) agent

to the extent of subjecting the property to a lien, this upon the theory that the landlord contemplated the necessity and required that such necessity be met. [Emphasis in original; *Id.* at 793; citations omitted.]

 It is undisputed that Interior's and Action's express contracts for improvements were with Hungry Hawaiian and not Green Acres or Navalco. Even though there was no express contract between either Navalco or Green Acres and the contractor, the facts do not, on the reasoning stated in *Utley v. Wear, supra*, exclude, as a matter of law, the possibility that Green Acres may have made Hungry Hawaiian its agent, at least to some extent, within the contemplation of the mechanics' lien statute.

The lease between Green Acres and Hungry Hawaiian appears to contemplate that the latter would operate a restaurant during the term of the lease. The record demonstrates that the building had not been used as a restaurant prior to the lease to Hungry Hawaiian. To make the premises suitable for operating a restaurant, substantial improvements were necessary, but there is nothing in the lease which requires any improvement, except for the fire sprinkler system which was specifically required by a rider to the lease. Interiors provided some of the improvements necessary to allow the premises to be used as a restaurant, and Action installed the fire sprinkler system which clearly benefited both the lessor and lessee. The lessor retained the right to periodically inspect the installed system to insure compliance with the lease.

Although the Hungry Hawaiian lease was for a term of twelve years and two months, there is nothing in the record to indicate that all the improvements made were usable only by Hungry Hawaiian. Certainly that does not appear to be true as to the fire sprinkler system.

A similar factual situation arose under a comparable mechanics' lien statute in *Mas-*

*terson v. Roberts,* 336 Mo. 158, 78 S.W.2d 856, 858 (1934). The court stated:

It is clear that, when the owner of the life estate made the contract in the lease which, because of his conduct, verbal directions, and the condition of the building, by necessary implication, if not by direct statement, clearly obligated the tenants to alter the building from a garage to a moving picture theater, by requiring substantial alterations, he made these lessees his agents within the contemplation of the mechanic's lien statutes to make such improvements . . . .

Green Acres relies on *Commercial Fixtures & Furnishings, Inc. v. Adams,* Utah, 564 P.2d 773 (1977), for the proposition that an agency will not be implied when the terms of a lease state that the lessee shall be liable for improvements. The case also held that generally a tenant's creditors have no greater right to charge the land for the value of the improvements than does the tenant.

*Commercial Fixtures* was an action for unjust enrichment by a contractor against the lessor for the value of improvements which the lessee had contracted for. The lessee, under the lease, was held to have no right to charge the land with the value of improvements. In holding that the plaintiff had no greater right against the lessor than he had against the lessee, the Court emphasized that the plaintiff had not filed a lien against the property under the mechanics' lien law, and that the action was in equity "without any attempt to exhaust any legal remedies available." *Id.* at 774.

Since the plaintiffs in this case seek a legal remedy based on the mechanics' lien statute and not general equitable principles, *Commercial Fixtures* is not controlling in the instant case.

In this case the sublease does not foreclose the possibility, as a matter of law (the

case having been decided in summary judgment), that Hungry Hawaiian was an agent of Green Acres under the mechanics' lien statute to the extent that certain improvements were made to the premises which clearly and actually conferred a value on Green Acres when Hungry Hawaiian terminated its tenancy. We conclude that there are genuine issues of material fact which should be tried.[5]

## II. The Christensen's Guarantee

The theory of recovery Interiors and Action asserted against the Christensens is based on a guarantee executed by Roy E. Christensen in connection with the master lease between Navalco and Green Acres. That guarantee provides:

In consideration of Landlord's remodeling the existing building at a cost not to exceed One Hundred Thousand and no/100 Dollars ($100,000.00), Roy E. Christensen, his heirs, his distributees, executors, administrators and legal representatives do hereby agree to personally guarantee the payment required to amortize the improvements as specified by Tenant.

Date: 1/24/75

/s/ _____
Roy E. Christensen
[unsigned] _____
Carol M. Christensen

Roy E. Christensen also guarantees the performance by tenants of its obligations under this lease; provided, however, that such guarantee shall expire as soon as tenant has received an aggregate of $100,000 in capital and surplus through the sale of its stock.

/s/ _____
Roy E. Christensen
[unsigned] _____
Carol M. Christensen

Interiors and Action argue that they were entitled to rely on this guarantee for

---

**5.** Green Acres' claim that under no circumstances can a lien attach to its interest because it was not mentioned in the notice of lien is

without merit under our holding in *Buehner Block Co. v. Glezos,* 6 Utah 2d 226, 310 P.2d 517 (1957).

ultimate payment by the Christensens for the improvements made in case Hungry Hawaiian failed to pay. The district court ruled that (1) defendant Carol M. Christensen did not sign the guarantee and therefore could not be bound by it, (2) the guarantee was special because it ran to Navalco only and not the public in general, and (3) the second part of the guarantee had expired by its own terms prior to any work having been commenced on the Hungry Hawaiian portion of the building.

The Christensens submitted an affidavit in support of their motion to dismiss. The affidavit, which was unopposed by Interiors and Action, stated that Christensens' only interest in the Green Acres building was as stockholders in Green Acres of America, Inc., and that they had not entered into a lease or other agreement with Hungry Hawaiian or in any way consented to improvements made at the instance of Hungry Hawaiian. An additional affidavit by Mark Sumsion, Secretary of Green Acres, stated that prior to February 25, 1978, the date the first work was done by Interiors and Action, Green Acres had an aggregate in capital and surplus in excess of $100,000. We are obliged to accept the statements in the affidavits as true.

Interiors and Action maintain that, even though Carol Christensen did not sign the guarantee, there is an issue of fact whether she become an agent for her husband, and he for her, so that she could be held liable on the guarantee even though she did not sign it. Although such a mutual agency may arise under some circumstances, we need not rule on that issue here because the second and third conclusions of the district court concerning the guarantee here are clearly correct.

█ General and special guarantees were defined in *Burkhardt v. Bank of America Nat. Trust & Sav. Assoc.*, 127 Colo. 251, 255–56, 256 P.2d 234, 236 (1953) as follows:

There are various kinds of guaranties; however, they generally fall into one of two classifications, that is, "general" or "special." A "general" guaranty is such that it may be accepted by the public generally and according to its written terms; anyone to whom it is presented may enforce or comply with its terms and the liability of the guarantor attaches. A "special" guaranty is addressed to a particular person, who alone may have the benefits thereof and to whom the guarantor only is liable ....

\* \* \* \* \* \*

The liability of the guarantor is not to be extended by implication beyond the express limits or terms of the instrument, or its plain intent ....

See also *Finance America Private Brands, Inc. v. Harvey E. Hall, Inc.*, Del.Super., 380 A.2d 1377 (1977); *Periman v. Rogers*, 187 Ark. 565, 61 S.W.2d 59 (1933). Although the first guarantee did not specifically name Navalco, it is clear that the reference to the landlord meant Navalco. Therefore, on the definition stated above, the guarantee was clearly special, and Action and Interiors are not entitled to any benefit from that guarantee.

█ Furthermore, Action and Interiors cannot rely on the second guarantee. Prior to the commencement of any work by either of them, Green Acres had an aggregate of $100,000 of capital through the sale of stock. This extinguished the obligation created by the guarantee under the explicit terms of the guarantee.

The trial court correctly concluded that there were no material issues of fact and that the Christensens were entitled to judgment as a matter of law.

### III. Navalco

We turn now to Navalco's appeal in No. 17096 from the judgment entered after a trial by the district court, sitting without a jury, holding that Interiors and Action had valid mechanics' liens against Navalco's fee interest. Navalco also appeals from (1) the refusal of the district court to amend the findings of fact, conclusions of law, and

judgment, and (2) the refusal to award Navalco judgment on its cross-claim against Green Acres.

On April 20, 1979, Navalco filed a motion for summary judgment against Interiors and Action. A hearing was held on the motion on May 29, 1979, and the motion was denied. A different judge conducted the trial. The court filed its memorandum decision December 13, 1979, and findings of fact and conclusions of law as to the claim between Interiors and Action against Navalco on December 17, 1979.[6] Judgment was entered February 27, 1980. The court found that Navalco impliedly authorized plaintiffs to furnish the labor and material for the Hungry Hawaiian premises. In its memorandum decision, the trial court stated:

> The Court finds that Navalco impliedly authorized Interiors and Action Fire to furnish to Navalco's premises the labor and materials they furnished. This finding of implied authorization is premised entirely on what is contained in the Master Lease, Exhibit 2, the Sublease, Exhibit 3, and the acceptance of the Sublease by Navalco, Exhibit 16 and is further premised on the work contracted for by the parties to these documents and which was done for them by Interiors and Action Fire. Said finding is not premised on any other circumstance except in the case of the claim of Interiors, the Court does find that by reason of the conversation during April 1978 that Mr. Cutshaw of Interiors had with authorized representatives of Navalco that Interiors continued to do work on said premises it would not otherwise have done but for said conversation and the Court finds the reasonable value of the labor and materi-

als furnished after the date of said conversation by Interiors to the premises to be $582.00.

 The reference to the conversation of April 1978, relates to a conversation in which representatives of Navalco assured the presidents of Interiors and Action that they would receive payment one way or the other. The trial court was correct in determining that work done by Interiors after the date of the conversation would not have been done had it not been for the representations made at that meeting. Action had completed its work prior to the meeting. Navalco does not dispute the award of $582 to Interiors made by the court.

 As to the argument that Navalco authorized the improvements by a letter of acceptance, which was signed by Navalco January 31, 1978, we are of the view that the acceptance amounted to no more than its consent that the alterations be made. The record shows no more than Navalco's knowledge of and acquiescence in the making of the improvements by Hungry Hawaiian. Navalco's knowledge and acquiescence in the making of the improvements is not sufficient to charge the fee owner's interest with a mechanic's lien, see *Zions First National Bank v. Carlson*, 23 Utah 2d 395, 464 P.2d 387 (1970), especially since Navalco was a remote lessor and the master lease between Navalco and Green Acres did not contemplate that the premises were to be used as a restaurant. Therefore, the judgment against Navalco, with the exception of the $582, must be reversed.[7]

Finally, Navalco attacks the refusal of a different judge than the one who conducted the trial to amend the findings of fact, conclusions of law, and judgment. The mo-

---

**6.** The court also granted judgment for certain of the other lien claimants and against Green Acres. That portion of the judgment was not appealed.

**7.** In some states an owner or other person having an interest in land must disclaim responsibility for payment for the improvements or his interest will be subject to a mechanic's

lien. See, e.g., Cal.Civ.Code §§ 3094, 3129 (West 1924); Colo.Rev.Stat. § 38–22–105 (1973); Or.Rev.Stat. 87.030 (1981). For a general discussion of the scope and coverage of the mechanics' lien law in the various states, see 10 Thompson on Real Property §§ 5187, 5189, 5190, 5211 (rep. ed. 1937).

tion asked that the judgment reflect the granting of relief as prayed for by Navalco in its cross-claim against Green Acres. In denying the motion, the court concluded that Navalco had abandoned its claim by not presenting any evidence at trial in support of the cross-claim and by not reserving determination of the claim to a later date.

At the trial, counsel for Green Acres and Navalco represented to the court that they had arrived at a tentative settlement of the controversy between the two parties but that it had not been reduced to writing. Navalco rested its case without presenting evidence on the cross-claims. When the proposed settlement agreement was subsequently drafted by Green Acres' counsel, Navalco's counsel found it unacceptable. Not being able to recover the differences, he then filed the motion to amend. The motion, in effect, asked the court to enter judgment on the cross-claim even though no evidence had been presented and the issue had been decided.

The district court correctly concluded that Navalco had waived its cross-claim against Green Acres by failing to present evidence on its cross-claim at trial, and by failing to reserve the issue for a later determination. Orderly procedure requires that a party present all his evidence on the issues once he embarks upon the proof of his case. *Clegg v. Lee*, 30 Utah 2d 242, 516 P.2d 348 (1973). See also *Simpson v. General Motors Corp.*, 24 Utah 2d 301, 470 P.2d 399 (1970). Failure to adduce evidence on a claim at issue constitutes a waiver of the claim. *Upton v. Heiselt*, 118 Utah 573, 223 P.2d 428 (1950).

In No. 17105 the judgment as to Green Acres is reversed and the case remanded for further proceedings as to Green Acres, with costs to appellants. The judgment as to Christensens is affirmed, and costs awarded them. In No. 17096 the judgment is affirmed as to $582 and reversed as to the remainder. No costs.

HALL, C. J., and OAKS, J., concur.

HOWE and DURHAM, JJ., do not participate herein.