# UNITED STATES COURT OF APPEALS

**Filed 4/22/96**

## TENTH CIRCUIT

---

In Re: TANSET RESOURCES AND
     SERVICES, INC.,

   Debtor,

_____

ENVIROCARE OF UTAH, INC.,

    Defendant-Appellee.

v.

HARRIET E. STYLER, Trustee,

    Plaintiff-Appellant.

No. 95-4097
(D.C. No. 94-CV-945-S)
(D. of Utah)

---

## ORDER AND JUDGMENT[*]

---

Before **PORFILIO**, **ANDERSON**, and **TACHA**, Circuit Judges.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The cause is therefore ordered submitted without oral argument.

Harriet E. Styler, Trustee for the Chapter 7 bankruptcy estate of Tanset Resources and Services, Inc., appeals the decision of the United States District Court for the District of Utah reversing an order of the bankruptcy court. The bankruptcy court granted summary judgment to Ms. Styler in her action to avoid prepetition transfers made by Tanset Resources to appellee, Envirocare of Utah, Inc. The transfers were payments upon a dishonored check given by the debtor to Envirocare. The district court reversed, rejecting Ms. Styler's argument that the payments were made to benefit Paul Holt, an insider of the debtor. We affirm.

The facts in this case are undisputed. The debtor, Tanset Resources, was in the business of buying, selling, and brokering precious metals, precious stones, and rare coins. Paul Holt was the president, a director, and the sole shareholder of Tanset, and thus, an insider of the debtor. Mr. Holt was ultimately in charge of the financial affairs of the debtor, overseeing deposits, payments, and loans. However, the debtor did not maintain current accurate ledgers for its checking account.

In January 1990, Envirocare agreed to purchase gold coins from

the debtor for $49,932, and by the end of the month, delivered that amount to the debtor as payment for the coins. The funds were deposited into the debtor's bank account and used in the operation of its business. Mr. Holt made no personal use of the money. Envirocare and the debtor eventually decided to cancel the transaction, and on March 2, the debtor delivered a check, signed by Mr. Holt, in the amount of $49,932, to Envirocare. The check was dishonored on presentment because of insufficient funds. It is undisputed Mr. Holt believed there were funds in the account sufficient to honor the check when it was delivered.

Over the next two months, the debtor made five payments to Envirocare which totaled $49,932, and fully repaid the debt owed for the returned check. On December 20, 1990, the debtor filed a petition for relief under Chapter 11 of the Bankruptcy Code which was later converted to a case under Chapter 7. Therefore, the payments to Envirocare were made between 90 days and one year before the date of the filing of the petition for bankruptcy.

As trustee for the debtor, Ms. Styler filed a complaint in the bankruptcy court under 11 U.S.C. § 547(b)(1) to avoid the payments made by the debtor to Envirocare. That provision of the Bankruptcy Code allows a trustee to avoid a transfer made by the debtor during insolvency "to or for the benefit of a creditor" in payment of an antecedent debt. The bankruptcy court granted the trustee's subsequent motion for summary judgment, and Envirocare appealed to

the district court.

In an oral ruling, the district court reversed the bankruptcy court, holding Mr. Holt was not a creditor of the debtor within the meaning of 11 U.S.C. § 547(b)(1). The court accordingly concluded the repayment of funds to Envirocare to cover the dishonored check did not constitute an illegal preference. Ms. Styler appeals from that judgment.

Ms. Styler raises three issues. First, she questions whether the district court properly concluded the extended reach back period for preference recovery under 11 U.S.C. § 547(b)(4)(B) should not apply because Mr. Holt was open to potential liability and statutory penalty for signing the returned check. Second, she argues the district court erred in concluding Mr. Holt was not a creditor of Tanset, claiming Holt was liable to Envirocare for the returned check under UTAH CODE ANN. § 7-15-1 and, therefore, had a contingent right of reimbursement against Tanset. Third, Ms. Styler argues 11 U.S.C. § 547 does not limit the extended reach back period for preferences solely to those cases involving contractual guarantees. We need only consider whether Mr. Holt was benefited by the transfers as required by § 547(b)(1).

Under 11 U.S.C. § 547(b)(1) and (4), the Bankruptcy Code extends the preference period to one year when payments are made for the benefit of a creditor who was an insider at the time of the transfer. To prove the transfers benefited Mr. Holt, Ms. Styler

relies upon UTAH CODE ANN. § 7-15-1(1) which states: "[a]ny person who makes, draws, signs, or issues any check, ... whether as corporate agent or otherwise, ... is liable to the holder of the check" if the check is not honored and returned for insufficient funds. Assuming Mr. Holt and the debtor were jointly liable to Envirocare, Ms. Styler argues **Mountain States Tel. & Tel. Co. v. Payne**, 782 P.2d 464 (Utah 1989), supports her application of the Utah "bad check" statute.

The essence of **Mountain States Tel.**, however, is that UTAH CODE ANN. § 7-15-1 does not impose strict liability on the check signer. Although Ms. Styler exerts great effort distinguishing the facts to make her case, she is unpersuasive.

In **Mountain States Tel.,** a secretary who routinely signed checks at the direction of her employer signed later dishonored checks. The secretary had no knowledge or reason to believe the checks were drawn on insufficient funds, and she had no interest, beneficial or otherwise, in the account. The court found it unjust to hold the secretary liable for the company's checks.

Drawing a contrasting analogy, Ms. Styler argues Mr. Holt was the debtor's corporate officer and ultimately responsible for all its activities. His financial prospects were tied to the debtor, and he was responsible for the checking account. Thus, Ms. Styler argues Mr. Holt's actions fit squarely into the scope of the statute because of its broad language.

- 5 -

Yet, **Mountain States Tel.** held § 7-15-1 does not impose such strict liability on the signatory. The court notes the statute, as originally enacted, required proof of intent to defraud before liability attached. **Mountain States Tel.**, 782 P.2d at 466. When the statute was amended in 1979, the words "willfully with intent to defraud" were eliminated. However, the court concluded knowledge and intent were still inherent in the statute because when "uncertainty exists as to the interpretation and application of a statute, it is appropriate to look to its purpose in the light of its background in history, and also to the effect it will have in practical application ...." **Id.** (quoting **Stanton Transp. Co. v. Davis**, 341 P.2d 207, 209 (Utah 1959)). Because the statute's history included an "intent" element, and strict liability would "subject innocent employees who sign checks at the direction of their employers to personal liability," the court concluded the statute still requires knowledge or intent. **Id.** "[W]e may construe section 7-15-1 to require that the signator [sic] of a bad check personally receive benefits, services, or money transfer or, in the alternative, have actual knowledge that the check is drawn on insufficient funds in order to be held liable." **Id.** at 467. Thus, liability would not attach unless the signatory actually received financial benefit or knew the check was bad.

It is undisputed at the time the bad check was delivered to Envirocare, Mr. Holt believed there were sufficient funds in the

account to cover the check.  Moreover, as acknowledged by Ms. Styler, the debtor, not Mr. Holt, received the benefit from the transaction.  Nonetheless, **Mountain States Tel.** makes clear, in the absence of proof of his actual knowledge of the insufficiency of the check, Mr. Holt is not liable under § 7-15-1. Consequently, the transfers made to Envirocare could not inure to his benefit as required by 11 U.S.C. § 547(b)(1).  Having arrived at this conclusion, it is unnecessary to consider the other arguments raised by the trustee.

**AFFIRMED.**

**ENTERED FOR THE COURT**

**John C. Porfilio**
**Circuit Judge**

-7-